# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS
## Washington, D.C.

## UNITED STATES

### v.

## Webster M. SMITH
## Cadet (E1C), U.S. Coast Guard

## CGCMG 0224

## Docket No. 1275

## 9 April 2008

General Court-Martial convened by Superintendent, U.S. Coast Guard Academy. Tried at New London, Connecticut, on 23 May and 19-28 June 2006.

| | |
|---|---|
| Military Judge: | CAPT Brian M. Judge, USCG |
| Trial Counsel: | CDR Ronald J. Bald, USCG |
| Assistant Trial Counsel: | LT Scott C. Herman, USCG |
| Civilian Defense Counsel: | Ronald C. Machen, Esquire |
| | Merle J. Smith, Jr., Esquire |
| Detailed Defense Counsel: | LT Stuart T. Kirkby, JAGC, USNR |
| Civilian Appellate Defense Counsel: | Ronald C. Machen, Esquire[1] |
| | John Payton, Esquire |
| | Will Crossley, Esquire |
| | Daniel S. Volchok, Esquire |
| | Stuard Delery, Esquire |
| Detailed Appellate Defense Counsel: | LCDR Nancy J. Truax, USCG[2] |
| | LCDR Necia L. Chambliss, USCGR[3] |
| Assistant Appellate Defense Counsel: | LT Robert M. Pirone, USCGR[4] |
| Appellate Government Counsel: | LCDR Patrick M. Flynn, USCG[5] |
| | LT Donna D. Leoce, USCG[6] |

### BEFORE
### McCLELLAND, TUCHER & LODGE
Appellate Military Judges

---

[1] Mr. Machen orally argued for Appellant.

[2] LCDR Truax was on the briefs and remained as lead detailed appellate defense counsel until 13 August 2007, at which time she became assistant appellate defense counsel and remained as such until she departed on terminal leave.

[3] LCDR Chambliss was designated as lead detailed appellate defense counsel on 13 August 2007.

[4] LT Pirone was designated as assistant appellate defense counsel on 13 August 2007.

[5] LCDR Flynn orally argued for the Government.

[6] LT Leoce filed the brief for the Government.

MCCLELLAND, Judge:

Appellant was tried by general court-martial composed of members. Contrary to his pleas, Appellant was convicted of one specification of unauthorized absence, in violation of Article 86, Uniform Code of Military Justice (UCMJ); one specification of attempted failure to obey a lawful order, in violation of Article 80, UCMJ; one specification of sodomy, in violation of Article 125, UCMJ; one specification of extortion, in violation of Article 127, UCMJ; and one specification of indecent assault, in violation of Article 134, UCMJ. The court sentenced Appellant to a dismissal, confinement for six months, and forfeiture of all pay and allowances. The Convening Authority approved the sentence as adjudged.

Before this Court, Appellant has assigned six errors:

I.    The convictions for extortion, sodomy, and indecent assault must be reversed because the military judge violated Appellant's constitutional right to confront his accusers by limiting his cross-examination of SR.

II.   If the findings for extortion and indecent assault are set aside, then the sodomy conviction, which is based on private consensual non-commercial activity between adults of equal rank, is unconstitutional.

III.  The extortion conviction must be overturned because the Government failed to prove that Appellant threatened SR with the intent to obtain sexual favors.

IV.   The conviction for going from an appointed place of duty cannot stand because the Government failed to prove that Appellant knew that his duty assignment required him to remain in Chase Hall after 2200.

V.    The evidence was factually insufficient to sustain the conviction for attempted violation of an order.

VI.   The Convening Authority erred in summarily denying Appellant's request to defer confinement.

We summarily reject the third and fourth assigned errors. The evidence, though circumstantial, is sufficient to support the convictions. We will discuss the other assigned errors. We find no error and affirm.

**I**

Appellant asserts that the military judge erred in limiting his cross-examination of the complaining witness concerning the extortion, sodomy, and indecent assault specifications of which he was found guilty. We will review the military judge's decision *de novo*.[7] If error is found, we will reverse unless we find the error harmless beyond a reasonable doubt.

In May 2005, during the Coast Guard Academy's summer program, Appellant, a Coast Guard Academy cadet, and SR, a female Academy classmate, were assigned to neighboring cutters in Norfolk, Virginia. Appellant communicated with SR, letting her know that he was hearing rumors about her. They discussed the rumors, and SR told Appellant the story underlying the rumors. (R. at 878, 1320.) SR testified that she told Appellant a part of but not the whole situation; she lied to him by omitting details that would have painted her in a bad light. (R. at 878, 901-02.) Appellant assured her that he would counteract the rumors. (R. at 878, 1320.)

On 19 October 2005, Appellant communicated with SR to the effect that the rumors were still being talked about. Again they discussed the rumors, and this time SR told Appellant the complete story of what had happened. (R. at 880, 921, 1321.) Appellant testified to the effect that his source had indicated the story was different from what she had originally told him, and that when she told him the complete story, it was indeed "pretty substantially different." (R. at 1321.) SR testified that, at that point, she thought if she did not tell him the whole story, he would stop helping her. (R. at 922.) Her actions in the complete story, she admitted, violated cadet regulations and possibly the UCMJ, but she understood at the time of trial that she would not be prosecuted for them. (R. at 899.) Once she told Appellant the whole story, she testified, he responded that he needed motivation to continue helping her. (R. at 880-81.) Later that evening, Appellant and SR engaged in sexual conduct that became the subject of the extortion, indecent assault, and sodomy charges against Appellant. (R. at 881-92.) SR maintained that the

---

[7] The Court of Appeals for the Armed Forces has stated that it employs an abuse-of-discretion standard when reviewing claims that a military judge's evidentiary ruling violated the Sixth Amendment right of confrontation. *United States v. Moss*, 63 M.J. 233, 236 (C.A.A.F. 2006); *United States v. Israel*, 60 M.J. 485, 488 (C.A.A.F. 2005). These cases, as well as others preceding them, found error in the trial court's ruling, weakening the claim that they represent holdings as to the standard of review to be applied. In any event, we choose to review this issue *de novo* under our Article 66, UCMJ, responsibility to determine whether the findings and sentence, on the basis of the entire record, should be approved. *See United States v. Olean*, 56 M.J. 594, 598-99 (C.G.Ct.Crim.App. 2001).

3

reason she engaged in the conduct was because she "was scared to upset him because he had a big secret of mine." (R. at 891.)

Early in the trial, a closed Article 39(a) session was held pursuant to Military Rule of Evidence (M.R.E.) 412 to address the details of the story underlying the rumors, on which the defense proposed to cross-examine SR. * * * [REDACTED] * * * The military judge ruled that SR could be cross-examined concerning the lie in May, but that the details, as described in this paragraph, were not to be brought out.[8]

Appellant contends that the military judge's ruling was a "flagrant violation" of Appellant's Sixth Amendment right of confrontation. In defense of the extortion, indecent assault, and sodomy charges, Appellant sought to convince the court members that SR was lying about her sexual encounter with Appellant, in particular falsely contending that it was not consensual, and that she was doing so to protect herself from discipline. This argument, he asserts, would have been much more persuasive had the members known that before 19 October, SR had been lying to Appellant * * * [REDACTED] * * *, and doing so to protect herself from discipline.

M.R.E. 412 renders evidence inadmissible that is offered to prove a complainant engaged in sexual behavior other than that involved in the alleged offense. M.R.E. 412(a)(1). However, it excepts, among other things, "evidence the exclusion of which would violate the constitutional rights of the accused." M.R.E. 412(b)(1)(C). An accused has the right to admission of such evidence if it is relevant, material, and favorable to his defense. *United States v. Dorsey*, 16 M.J. 1, 5 (C.M.A. 1983) (*citing United States v. Valenzuela-Bernal*, 458 U.S. 858 (1982)). "Favorable" is further interpreted as "vital." *United States v. Banker*, 60 M.J. 216, 222 (C.A.A.F. 2004).

---

[8] It is undisputed that the details fall within Military Rule of Evidence (M.R.E.) 412's exclusion. Moreover, SR, a newly-commissioned Coast Guard officer at the time of trial, testified that she was still concerned about the story because "I'm afraid of rumors when I go from unit to unit." (R. at 877.) It is for this reason that we continue to treat the details as specified in M.R.E. 412(c), keeping them nonpublic, although M.R.E. 412 addresses itself to admission of evidence, implying that it applies at trials, and does not mention appellate proceedings. Portions of the briefs were sealed, and we held a closed hearing for oral argument on this assignment of error. We seal portions of this opinion in the same spirit; likewise the dissent.

Appellant was properly allowed to cross-examine SR concerning her May 2005 lie, pursuant to M.R.E. 608(b) and the Sixth Amendment. However, the right to confrontation is not absolute. "[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant. And as we observed earlier this Term, 'the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) (citation omitted). The trial judge could properly restrict Appellant's cross-examination of SR on the basis of M.R.E. 412, excluding, as he did, the details of the May incident, unless those details were relevant, material, and vital to his case. *Dorsey*, 16 M.J. at 5; *Banker*, 60 M.J. at 222.

Appellant cites *United States v. Bahr*, 33 M.J. 228 (C.M.A. 1991), and *United States v. Moss*, 63 M.J. 233 (C.A.A.F. 2006), in support of his argument that the details of the May incident were constitutionally required to be admitted. In each of these cases, evidence of a complainant's motive to fabricate was proffered but excluded.[9] In both cases, the court held the exclusion was prejudicial error.

In *Bahr*, the accused was charged with sexual offenses against his 14-year-old daughter. The defense offered the daughter's diary, in which she expressed intense dislike of her mother, and proposed to cross-examine her on it to show that she hated her mother. The Court of Military Appeals agreed that this tended to show a motive to testify falsely against her father in order to hurt her mother. Admission of such evidence was required under M.R.E. 608(c) and the Sixth Amendment. 33 M.J. at 233. The defense further sought to cross-examine the child concerning prior false statements to her classmates about being raped by soldiers in Spain, which she had admitted to counsel were lies she had uttered to attract attention. Again, the court agreed that this line of cross-examination was admissible to show the prosecutrix had a second motive to testify falsely. *Id.* at 233-34.

---

[9] M.R.E. 412 was not implicated in these cases.

The accused in *Moss* was charged with sexual offenses against his 14-year-old niece. The defense sought to show that the niece fabricated the allegations so as to cast herself as a victim to gain favorable treatment from her parents, by cross-examining her and her mother on her acts of misbehavior and the resulting punishments, and on the improvement in the relationship with her parents after she reported the allegations. 63 M.J. at 235. In this case, too, CAAF held the proposed cross-examination should have been allowed, citing M.R.E. 608(c) and the Sixth Amendment.[10] *Id.* at 237.

The circumstances of these cases are different from those of our case. The girls' claimed motives to fabricate, in order to retaliate against her mother and also to gain attention in the one case, and to divert attention from her own misdeeds in the other, were supported by direct evidence or evidence from an earlier parallel situation. In our case, the argument as to motivation is being made based on an earlier situation claimed to be parallel, but there is a significant difference between the two situations.

It is clear that SR wanted Appellant's help in suppressing rumors concerning the May 2005 incident, and it is fair to argue that avoiding discipline was a factor motivating her to lie to Appellant about the details. The motive for SR to falsify the truth regarding the May incident can be directly linked to her concern for either UCMJ or administrative action against her * * * [REDACTED] * * *. There is no apparent similar motive to fabricate her story regarding the events on 19 October 2005. There is no evidence in the record, no suggestion, and no reason to believe that anyone knew about the 19 October conduct other than Appellant and SR, and thus no reason to believe a preemptive false report on her part would be useful to her. Since no one else knew about the events that took place in the cadet barracks that night, there was no reason for SR to be concerned with either UCMJ or administrative action against her, and therefore no reason for her to falsify the information when she made her report[11] or when she testified at trial.

---

[10] During the trial of this case, there was little mention of motive as a basis for admission of the disputed evidence. M.R.E. 608(c) was not cited. In the defense's Notice Pursuant to M.R.E. 412, the argument referred to credibility generally, and went on to argue that the evidence at issue "tends to show the alleged victim as untruthful about her sexual conduct generally and specifically has motive to lie about the specific sexual rumors underlying the charge." (Appellate Ex. XIX at 3 (*citing United States v. Dorsey*, 16 M.J. 1 (C.M.A. 1983)).) However, the "motive to lie" point was not developed. In the context of this case, this omission makes no difference to our analysis.
[11] SR provided a signed statement dated 15 February 2006 to the Coast Guard Investigative Service containing the allegations against Appellant. (Appellate Ex. XVII, Enclosure 13; Appellate Ex. XXI at 1.)

Appellant could have cross-examined her upon her motive for making that report, instead of relying solely on a claimed parallel with the May incident, but did not do so. Hence, there is no evidence at all of motive to fabricate, and the earlier situation is not parallel.

The military judge's ruling allowed Appellant to attack SR's credibility by means of showing a prior lie. It precluded Appellant from showing that the prior lie pertained to * * * [REDACTED] * * *, but did not preclude Appellant from attempting to show, by other means, that SR had a motive to lie in her testimony against Appellant. Nor did it preclude Appellant from "portray[ing] the witness as the architect of a scheme of false allegations intended to cover up her own misconduct," as the dissent complains. That the witness lied came into evidence (R. at 901), as did the fact that the lie pertained to her misconduct (R. at 899-901).

We further disagree with the dissent that her testimony "created a substantially different impression of her credibility than what the defense had tried to show – namely, that SR had knowingly provided Appellant with false information" for the purpose of using him to counter a career-threatening rumor, impliedly by disseminating the false information. She testified on direct examination that she "did not tell [Appellant] the whole situation," but only "[a] little bit of it." (R. at 878.) But she also admitted, under cross-examination, that she had lied to him, that the bits she had omitted painted her in a bad light. (R. at 901-02.) Appellant's testimony reflected that her statements to him had been "substantially different." (R. at 1321.) The military judge's ruling prevented the members from judging for themselves whether her behavior should be characterized as a lie or something less, but it did not prevent Appellant's defense counsel from arguing, as he did, that she admitted lying. [12] (R. at 1510.)

As noted above, an accused has the right to admission of evidence despite M.R.E. 412 if it is relevant, material, and vital to his defense. *United States v. Dorsey*, 16 M.J. 1, 5 (C.M.A. 1983); *United States v. Banker*, 60 M.J. 216, 222 (C.A.A.F. 2004). In this case, we find that the

---

[12] The dissent propounds the theory that SR sought to have Appellant lie for her. Both her testimony and Appellant's testimony imply that he volunteered to help her suppress the rumors, without her asking. (R. at 878, 1320.) She also testified that on 19 October, she said to him, "I'm not gonna ask you to lie for me." (R. at 903.) As the dissent notes, there is nothing to indicate just what she hoped for or expected him to do to "squash" or suppress rumors. On the evidence, it would be fair argument to say that she sought to have him lie for her, but the defense did not actually make that argument at trial.

evidence sought to be admitted was no more than superficially relevant, was not material, and was not vital to his defense. We find no error in the military judge's ruling against Appellant.[13]

## II

Appellant asserts that if he prevails on the previous assignment, clearly necessitating reversal of the extortion and indecent assault convictions, the sodomy conviction must also be reversed because it would be unconstitutional under *Lawrence v. Texas*, 539 U.S. 558 (2003).

In *United States v. Marcum*, 60 M.J. 198, 206 (C.A.A.F. 2004), the court held that *Lawrence* applies to the military, but Article 125, the UCMJ's punitive article on sodomy, is not facially unconstitutional. Rather, the court concluded "that its application must be addressed in context," that is, is it constitutional as applied? *Id.* The court set forth three questions to be considered.

> First, was the conduct that the accused was found guilty of committing of a nature to bring it within the liberty interest identified by the Supreme Court? Second, did the conduct encompass any behavior or factors identified by the Supreme Court as outside the analysis in *Lawrence*? Third, are there additional factors relevant solely in the military environment that affect the nature and reach of the *Lawrence* liberty interest?

*Id.* at 206-07 (citation omitted).

In the absence of the coercive element of extortion, Appellant's conduct might be characterized as private, consensual sexual activity between adults. We may assume, as the court did in *Marcum*, that the conduct would be within the *Lawrence* liberty interest. Since Appellant and SR were both first-class cadets and not in the same chain of command, unlike the situation in *Marcum*, we may also assume that the conduct would not encompass behavior or factors identified as being outside the *Lawrence* analysis. However, in the language of *United States v. Stirewalt*, 60 M.J. 297, 304 (C.A.A.F. 2004), Appellant's conduct "squarely implicates the third prong of the framework."

---

[13]The military judge did not explicitly find that the evidence was relevant, but did say, "I agree that this theory would be a valid reason for admitting this evidence under M.R.E. 412(b)(1)(C)." (Appellate Ex. CLIII at 3.) He went on to find that "the minimal probative value of this evidence is outweighed by danger of unfair prejudice to [SR]'s privacy

The Regulations for the Corps of Cadets includes an Article 4-5-05 entitled Sexual Misconduct. (Appellate Ex. XXIV.) Paragraph a.3 thereof prohibits sexual conduct on board military installations, which includes the Academy, even if between consenting cadets. We find that Appellant's conduct, as he testified to it (R. at 1326-27), was outside any protected liberty interest recognized in *Lawrence*. *See Stirewalt*, 60 M.J. at 304 (liberty interest is considered "in light of the established . . . regulations and the clear military interests of discipline and order that they reflect"). We note that a holding otherwise would apparently yield the anomalous result that the regulation would be enforceable as to all forms of sexual conduct except sodomy, as the Government pointed out at oral argument.[14]

The presence of the regulation readily distinguishes this case from those of the Army Court of Criminal Appeals opinions attached to Appellant's brief, in which in-barracks consensual sodomy convictions were overturned. In one of them, the opinion specifies that there was no evidence of a barracks policy prohibiting the conduct. *United States v. Meno*, ARMY 20000733, at 4 (A.Ct.Crim.App. Jun. 22, 2005) (per curiam). In the other, a guilty plea case, the accused had not admitted any facts that would take the case out of the *Lawrence* liberty interest.[15] *United States v. Bullock*, ARMY 20030534, at 5 (A.Ct.Crim.App. Nov. 30, 2004). We are not aware of any court-martial appellate decision overturning a sodomy conviction based on *Lawrence* when there was a regulation aside from Article 125, UCMJ, prohibiting the behavior.[16]

### III

Appellant was charged with violating an order prohibiting him from contact with cadets. He was convicted of an attempt to violate the order. He contends that the evidence was factually insufficient to support the conviction, in that his attempt to contact a cadet took place the day before the order was issued.

---

interests [per M.R.E. 412(c)(3)] and the potential danger of sidetracking the [members'] attention to a collateral issue [per M.R.E. 403]." *Id.*

[14] We have found no authority suggesting that military regulation of sexual conduct generally may be unconstitutional.

[15] Appellant's clemency request to the Convening Authority, dated 22 August 2006, attached another Army Court of Criminal Appeals opinion and cited a Navy Court of Criminal Appeals opinion, each of which involved a guilty plea with no indication or admission by the accused of additional factors taking the case out of the *Lawrence* liberty interest.

The specification charges violation of a paragraph of a written order issued by the Commandant of Cadets on 7 December 2005, which is Prosecution Exhibit 4. It is styled as an amendment to a written order he had issued on 5 December 2005, which is Defense Exhibit F.[17] The Commandant of Cadets issued the written order of 5 December at the time Appellant was removed from the barracks. (R. at 820, 1351.) Appellant's acknowledgment of receipt is recorded on Defense Exhibit F at 0410 on "5 DEC 05." The Commandant of Cadets issued the written order of 7 December after receiving legal advice (R. at 820), but the intent of the order had not changed (R. at 807). Appellant's acknowledgment of receipt is recorded on Prosecution Exhibit 4 at 1600 on "DEC 05" (sic). This order was issued after the Commandant of Cadets had referred allegations of sexual assault against Appellant to Coast Guard Investigative Service (CGIS) for investigation.[18] (R. at 814.)

The order of 7 December alleged to have been violated reads, "You are prohibited from any contact of any kind, directly or indirectly, through any source, or by any means, with Coast Guard Academy Cadets wherever they are located; to include text messages, emails, or phone calls." (Prosecution Ex. 4.) This differs from the order of 5 December by the added words, "directly or indirectly, though any source, or by any means," and "wherever they are located."

The specification alleges violation of the order by, "on or about 16 December 2005, . . . wrongfully sending an instant message to [KS], with the intention of having [KS] contact Cadet [KN, an Academy classmate of Appellant]."

KS and KN were close friends. (R. at 408, 423, 496, 555; Defense Ex. A.) KS testified that she received an instant message from Appellant in December 2005. (R. at 519.) The text of the instant message is found in Prosecution Exhibit 1 without any marker as to date of origin, and includes the words, "I need you to make sure that she knows that I hope that everything is physically and emotionally ok with her right now." KS understood this to mean Appellant

---

[16] Under the circumstances of this case, even if Appellant were found not guilty of extortion and even if there were no regulation, it is not clear that the conduct would be within the *Lawrence* liberty interest. We do not reach that question.

[17] Defense Exhibit F was admitted (R. at 818), although it is not listed in the index as an exhibit admitted into evidence and is found in the record with exhibits that were not admitted.

[18] Appellant was acquitted of several charges growing out of that investigation.

wanted her to relay a message to KN. (R. at 519.) She saved it to her computer desktop, intending to relay it to KN, but when she realized that she would be unable to do so before taking a trip, she emailed the text to herself. (R. at 519-20.) Prosecution Exhibit 1 is a printout of the email, dated 16 December 2005. KS testified that she had received the instant message a few – less than ten – days before that. (R. at 560-61.)

Appellant testified that he had sent an instant message to KS on 6 December 2005 (R. at 1333), before receiving information that he was not supposed to contact any cadets *indirectly* (R. at 1351), but none after receiving the order the next day prohibiting *indirect* contact with KN (R. at 1334).

Appellant argues that his testimony was certain as to the date he sent the message and KS's testimony was uncertain, and therefore his version must be accepted. Apparently the members did not believe Appellant's version and believed KS's testimony that she had received the instant message a few (less than ten) days before 16 December. We are satisfied that the evidence supports the finding that Appellant sent the instant message after he received the 7 December order.[19]

## IV

Appellant asserts error on the part of the Convening Authority in summarily denying his request for deferment of the sentence to confinement.

Shortly after the trial ended at 1856 hours on 28 June 2006, Appellant submitted a written request for a one-week deferment of the sentence of confinement. The Convening Authority memorialized his action on the request by writing on it, "Request Denied," his signature, and the date, "06/28/06." This was error, as such action must not only be in writing, R.C.M. 1101(c)(3), but also "must include the reasons upon which the action is based." *United States v. Sloan*, 35 M.J. 4, 7 (C.M.A. 1992). The Government concedes the error, but contends that Appellant is not entitled to relief. (Government Br. 14-15.)

---

[19] We reject Appellant's suggestion that the 7 December amendment came about because the Commandant of Cadets learned Appellant had sent the instant message the previous day. (Appellant Br. 35.) There is no evidence and no reason to suspect that anyone other than Appellant and KS knew about the instant message at the time.

Appellant claims prejudice in that he was "paraded in front of frenzied members of the media . . . in what can only be described as a . . . 'perp walk.'"[20] (Appellant Br. 38.) The Government's affidavits contradict Appellant's version of events. This Court has extremely limited authority to resolve factual disputes that arise from post-trial submissions. *United States v. Ginn*, 47 M.J. 236, 238 (C.A.A.F. 1997).

Nevertheless, assuming Appellant's version of the facts, we agree with the Government that no relief is due. We find that the Convening Authority's failure to state any reason for denying the deferment request, while error, was harmless. Appellant served the same amount of confinement he would have served if the deferment had been granted, albeit without a week of delay in its commencement. Assuming he suffered the humiliating and embarrassing experience he describes, we know of no precedent for relief, and we are not inclined to grant relief. *See United States v. Sloan*, 35 M.J. 4 (C.M.A. 1992); *United States v. Brownd*, 6 M.J. 338 (C.M.A. 1979). Distasteful though it may be, we do not believe the criminal law has occasion to take cognizance of such an experience. In any event, there is no guarantee that a deferment of confinement would have avoided exposure to the media when he reported for confinement at the end of the deferment.

## Decision

We have reviewed the record in accordance with Article 66, UCMJ. Upon such review, the findings and sentence are determined to be correct in law and fact and, on the basis of the entire record, should be approved. Accordingly, the findings of guilty and the sentence, as approved below, are affirmed.

Judge LODGE concurs.

---

[20] Appellant claims that his affidavit is corroborated by, and the Government's affidavits conflict with, media reports. We decline to accept media statements as evidence or take judicial notice of them.

TUCHER, Judge (concurring in part and dissenting in part):

I concur with the majority decision on Assignments II, IV, V, and VI. I dissent from the decision on Assignments I and III.

I agree with the majority opinion that admission of the underlying details of SR's secret – * * * [REDACTED] * * * – was subject to some limitation under Military Rule of Evidence (M.R.E.) 412. I would find, however, that the military judge abused his discretion when he prohibited the defense from cross-examining SR on her false statement to Appellant * * * [REDACTED] * * *, since this evidence was highly probative of the defense theory that SR engaged in a pattern of fabrication to avoid discipline. As discussed below, I believe that the military judge erred when he decided the admissibility of this evidence based on his own credibility determination of the only two witnesses involved. The military judge also erred in not considering important factors that favored admission of the defense evidence, including that the Government made first use of evidence of SR's secret in its case-in-chief to prove that she was extorted and coerced into sexual relations with Appellant; that SR's credibility was a key element in an otherwise uncorroborated case; and that the strength of the Government's case turned on the members finding the presence of subtle psychological influences that overcame SR's will. The excessive restrictions imposed on Appellant's Sixth Amendment confrontation rights allowed SR to testify through non-factual euphemisms on critical issues related to the Government's proof and her own credibility, and allowed the Government to create a substantially different impression of her truthfulness than what the defense had sought to show through the excluded evidence.

It is well-settled that "a primary interest secured by [the confrontation clause of the Sixth Amendment] is the right of cross-examination." *Douglas v. Alabama*, 380 U.S. 415, 418 (1965). "Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested." *Davis v. Alaska*, 415 U.S. 308, 316 (1974). Moreover, "the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Id.* at 316-17. In military courts-martial, the right to attack the partiality of a witness is primarily secured under M.R.E. 608(c), which provides for the admission of evidence that shows bias, prejudice, or any motive to misrepresent through cross-

examination of witnesses or extrinsic evidence. *See United States v. Hunter*, 21 M.J. 240, 242 (C.M.A. 1986); *United States v. Saferite*, 59 M.J. 270 (C.A.A.F. 2004).

Although trial judges have broad discretion to impose reasonable limits on cross-examination to address concerns over harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant, this discretion is not without boundaries. Where the accuracy and truthfulness of the witness' testimony are "key elements" in the Government's case, a trial court's refusal to allow the defendant to cross-examine the witness regarding possible bias, motive, or prejudice is a violation of his Sixth Amendment rights. *Davis*, 415 U.S. at 317-18; *see also Saferite*, 59 M.J. at 273 ("Evidence of bias can be powerful impeachment."); *United States v. Moss*, 63 M.J. 233, 236 (C.A.A.F. 2006) ("When the military judge excludes evidence of bias, the exclusion raises issues regarding an accused's Sixth Amendment right to confrontation."); *United States v. Bins*, 43 M.J. 79, 84 (C.A.A.F. 1995) ("When the defense offers this evidence, it may deny confrontation rights to exclude it."); *United States v. Foster*, 986 F.2d 541, 543 (D.C. Cir. 1993) ("The more important the witness to the government's case, the more important the defendant's right, derived from the Confrontation Clause of the Sixth Amendment, to cross-examine the witness.").

Evidence that SR had made * * * [REDACTED] * * * to Appellant should have been admissible at trial because the central issue was whether SR consented during their sexual encounter on 19 October 2005, and SR was the only Government witness on the issue of consent. The defense should have been able to show that because SR had falsely informed Appellant * * * [REDACTED] * * * in fabricating a false complaint of indecent assault against Appellant, where the motive underlying each statement was SR's fear of being disciplined. Here, the record of trial shows that SR relied on Appellant to contain rumors that were circulating over what prosecutors cryptically referred to as her "bad situation" or "secret." (R. at 881, 901, 922-23.) Both SR's "bad situation" and her encounter with Appellant in Chase Hall involved a military nexus that, if disclosed, subjected SR to discipline. Both incidents were connected, in that the encounter in Chase Hall apparently was meant to secure Appellant's continued assistance in "suppressing" rumors regarding the earlier encounter.

I find it significant that the Government made first use of evidence of SR's secret during its case-in-chief. Although the prosecution was able to present evidence that SR was coerced into unwanted sexual relations with Appellant by the implied threat that he would reveal the facts of her "bad situation," the defense was prohibited from showing that this same fear of disclosure weighed so heavily in SR's mind that she relied on Appellant to disseminate false information concerning her secret. The anomalous result was that the members heard only the Government's evidence on the question of SR's motivation in submitting to Appellant's advances, while the defense was unable to complete the picture by showing the depths of her fear and the lengths she allegedly had gone – and was prepared to go – to shield the facts of her misconduct.

I disagree that the cross-examination allowed the defense was adequate to develop SR's motive to testify falsely against Appellant. The sexual encounter between SR and Appellant had many outward appearances of being consensual. The Government's case of indecent assault was not strong and turned on the members finding the existence of coercion that was sufficient to overcome the victim's will. Resolving this issue necessarily required the members to carefully evaluate the potentially subtle psychological pressure that resulted from Appellant's veiled threat to reveal the truth about SR's secret – a threat that Appellant denied making. Certainly, one explanation for SR's encounter with Appellant was that she felt coerced into unwanted sexual relations. Another entirely plausible explanation was that the encounter resulted from her own calculation that Appellant needed additional "motivation" to continue spreading false information on her behalf.[1] Both scenarios would account for the considerable pressure SR was under after Appellant informed her that rumors still were circulating about her secret, but the latter would not necessarily describe extortion or an indecent assault.[2] Appellant could not develop this alternate scenario at trial because he was prohibited from adequately addressing SR's prior false statement.

In addition, the Government offered no evidence of a fresh complaint and no other evidence to support SR's account of the incident involving Appellant. SR was the Government's

---

[1] The defense attempted to develop this alternate theory during cross-examination of SR, but was hamstrung by its inability to speak directly to the facts of the prior false allegation. (R. at 903.)

[2] In fact, the Government, in apparent acknowledgment of the subtle psychological pressures at work, responsibly determined that it would not charge Appellant with *forcible* sodomy. In its answer and brief, the Government explained, "[a]s a practical matter, it would be difficult to convict someone of *forcible* sodomy on these facts, however, that does not mean that the conduct was *consensual*." (Government Br. 7.)

key witness against Appellant – in fact, SR's testimony was the only evidence supporting Appellant's conviction on extortion and indecent assault.  Moreover, her own testimony on the question of consent was far from conclusive.  For example, although SR testified that at one point during their encounter she pushed Appellant's head aside and told him, "Please don't," she also testified that they kissed each other and exchanged back massages; that he told her, "You don't have to if you don't want to"; and that she thanked him for his support – presumably in reference to his assistance in defusing rumors regarding her secret.  (R. at 885-86, 889-92, 914-17.)  On the unusual facts of this case, it was essential that the defense be given wide latitude to explore SR's credibility, and to fully develop any motive reasonably raised by the evidence that she would bring a false allegation of sexual assault against Appellant.  *See Moss*, 63 M.J. at 236 ("rules of evidence should be read to allow liberal admission of bias-type evidence").

The members eventually did hear SR admit that her secret involved a violation of Cadet Regulations (R. at 899), and that she had misled Appellant about the circumstances, saying, "Yes, I did lie to him" (R. at 901).  In addition, defense counsel argued in closing that SR "admitted she lied to Cadet Smith."  (R. at 1510.)  This limited impeachment allowed the defense was inadequate given that a general attack on a witness' credibility is not the same as a showing of bias or motive.  *See Davis*, 415 U.S. at 316-17.  Here, the members never were able to place SR's admission that she had lied to Appellant in any factual context, because they never heard what the secret was or what she had lied about.  The members only heard that SR had lied to Appellant in the past, not why she would have lied in bringing allegations against Appellant.

More importantly, SR was able to minimize her lie to Appellant by testifying that she had only omitted certain details from her account, saying, "I just didn't tell him all that occurred," and also that she told him, "I'm not gonna ask you to lie for me."  (R. at 902-03.)  Her testimony on this point created a substantially different impression of her credibility than what the defense had tried to show – namely, that SR had knowingly provided Appellant with false information, which he then used to counter a career-threatening rumor.  *See Olden v. Kentucky*, 488 U.S. 227, 232 (1988) (defendant states a violation of Confrontation Clause if a "reasonable jury might have received a significantly different impression of [the witness'] credibility" had excluded line of cross-examination been allowed).  Establishing this point was essential, as the crux of Appellant's

defense was that SR had followed a pattern of fabrication to avoid discipline that was revealed by like motives from a prior scheme. Given this record, where SR was able to downplay her lie as a mere omission of details, and the defense was not allowed to inform the members what SR had lied about or the lengths she was prepared to go to protect her career, the members may well have concluded that the defense was engaged in a "speculative and baseless line of attack on the credibility of an apparently blameless witness." *Davis,* 415 U.S. at 318.

The military judge issued his ruling under M.R.E. 412, which broadly prohibits the introduction of evidence of a victim's past sexual behavior or sexual predisposition, unless the evidence fits into one of three narrow exceptions.[3] Appellant moved to admit the facts of SR's secret under M.R.E. 412(b)(1)(C), which provides an exception for "evidence the exclusion of which would violate the constitutional rights of the accused."[4] Evidence that is offered under an enumerated exception to M.R.E. 412 shall be admitted if the military judge determines that the evidence is relevant and that the probative value outweighs the danger of unfair prejudice – i.e., prejudice to the privacy interests of the alleged victim. *See* M.R.E. 412(c)(3); *United States v. Sanchez*, 44 M.J. 174, 178 (C.A.A.F. 1996). In addition, relevant evidence that is offered under the constitutionally required exception must be admitted if it is material and favorable to the defense, and therefore is necessary. *United States v. Banker*, 60 M.J. 216, 222 (C.A.A.F. 2004).

In a detailed ruling, the military judge correctly determined that evidence of * * * [REDACTED] * * * was relevant evidence of SR's motive to make a false claim of indecent assault against Appellant, stating, "I agree that this theory would be a valid reason for admitting this evidence under M.R.E. 412(b)(1)(C) . . . ." (Appellate Ex. CLIII at 3.) The military judge reasoned:

---

[3] M.R.E. 412 is modeled after Federal Rule of Evidence 412 and is intended to protect victims of sexual offenses from degrading and embarrassing disclosure of intimate details of their private lives while preserving the constitutional rights of the accused to present a defense. Appendix 22 at A22-36, Manual for Courts-Martial, United States (2005 ed.).

[4] I agree with the majority that the trial defense team did not precisely address the admissibility of the evidence in terms of SR's "motive" to fabricate. Indeed, it appears that the defense objection has assumed greater clarity and focus on appeal. The defense, however, did argue at trial that the evidence implicated Appellant's confrontation rights to show the witness's "biases and . . . credibility," in that it revealed SR's "pattern" of claiming that * * * [REDACTED] * * * when disclosure could be damaging to her career. (R. at 97-98.) By focusing on SR's conscious decision to lie under similar circumstances in order to avoid punishment, the defense adequately raised the issue of SR's motive to fabricate allegations against Appellant.

17

* * * [REDACTED] * * *

*Id.*

However, the military judge then went on to conclude that the evidence had "low" probative value because:

> [T]he evidence proffered that [SR] made these statements is not strong since it comes from the accused, who has an obvious bias. [SR]'s written statement and Article 32 testimony on this point is not clear. She admitted at the Article 32 that she only partially confided in Cadet Smith in May and fully confided in him on October 19th; * * * [REDACTED] * * *.

*Id.*

I would find that the military judge erred when he decided the probative value of motive evidence based on his evaluation of the credibility of the only two witnesses involved. It is the members' role to determine whether a witness' testimony is credible or biased. *Bins*, 43 M.J. at 85. "In applying M.R.E. 412, the judge is not asked to determine if the proffered evidence is true; it is for the members to weigh the evidence and determine its veracity." *Banker*, 60 M.J. at 224. Accordingly, relevant and material evidence of * * * [REDACTED] * * * is no less admissible merely because it is offered through the testimony of the criminal accused. This is particularly so here, where SR – the only other witness to the conversation in issue – secured her unavailability to testify at the motions hearing by invoking her rights against self-incrimination.[5] (R. at 79.) In a credibility contest between Appellant and SR, it should have been up to the members to resolve discrepancies in their respective accounts and decide whom to believe.

---

[5] Because SR refused to testify, the military judge based his findings on Appellant's in-court testimony, SR's prior written statement, and the non-verbatim summary of her Article 32 testimony. Based on my review of the complete record, I would find that there was at least a reasonable probability that SR provided Appellant with a false account of her secret – * * * [REDACTED] * * * – which he then used to counter rumors on her behalf. Appellant's testimony concerning their initial conversation was partially corroborated in several key respects by SR's trial testimony, including her admission that the conversation took place, that she had "lied" to Appellant by omitting details that presented her in a "bad light," and that Appellant had assisted her by "squashing" rumors of her secret. (R. at 878, 901-02.)

As a second basis for excluding the defense evidence, the military judge concluded that SR's statement to Appellant was materially different from a report that she subsequently provided to investigators. The military judge stated:

> * * * [REDACTED] * * *, this would have little value in proving that her *official* allegations against Cadet Smith *resulting in a public trial* are also false.

(Appellate Ex. CLIII at 3.)

The military judge then concluded, "[T]he minimal probative value of this evidence is outweighed by danger of unfair prejudice to [SR's] privacy interests and the potential danger of sidetracking the member's [sic] attention to a collateral issue . . . ." *Id.*

In a trial on charges of extortion and coerced sexual relations, I do not agree that the defense intrudes in a collateral matter by making an inquiry into facts that describe the victim's fear that her secret will be revealed. Proof of the secret's existence and the genuineness of SR's fear of disclosure were key issues in the Government's case against Appellant, and the defense had a right to explore them, subject to carefully tailored restrictions respecting SR's privacy.[6] Moreover, by focusing on the confidential versus official nature of SR's two statements, the military judge overlooked the greater significance of the defense proffer. The defense theory was that SR's ultimate motive in avoiding discipline was revealed in her expectation that Appellant would place his reputation on the line and communicate false information to counter rumors then in circulation about her secret.[7] The defense argued that this same motive was also present in her complaint against Appellant, and it seems an artificial distinction to say that the formality of the complaint process somehow altered SR's overriding concern for protecting her career. *Compare*

---

[6] The military judge clearly recognized the relevance of the content of the secret to the extortion and indecent assault offenses, observing, "[I]f the secret is about something that is completely inconsequential, it makes it less likely that [SR] would have been willing to do something against her will." (R. at 112.) Ultimately, however, the Government was able to prove both the existence and importance of the secret through the witness's layering on of additional conclusory statements.

[7] There is no dispute that SR did not actively seek out Appellant to lie for her concerning her secret. However, after furnishing Appellant with an allegedly false account of her secret, SR apparently did nothing to discourage Appellant from using that information to counter rumors that were in circulation. In fact, SR's approval of Appellant's efforts to "help her" by suppressing rumors was reflected in her own trial testimony (R. at 901, 922-23, 926), and Appellant's threatened withholding of that assistance ultimately formed the basis of the Government's extortion charge.

*United States v. Bahr*, 33 M.J. 228, 233 (C.M.A. 1991) (error to exclude evidence of witness' prior false statements to classmates that she had been sexually assaulted; evidence was admissible to show witness' motive to testify falsely against accused in order to call attention to herself).

The majority largely sidesteps the problems with the M.R.E. 412 order and under its Article 66(c), Uniform Code of Military Justice (UCMJ), authority concludes that the instant case involves non-parallel statements – an earlier statement to Appellant where avoiding discipline was a factor in SR's motivation to lie, and a second statement to law enforcement investigators where no such motive existed because nobody else knew about the encounter and SR had no reason to fear UCMJ action. The majority emphatically concludes that because SR had no possible motive to fabricate her allegations against Appellant, the earlier statement was not relevant and therefore was inadmissible at trial. The flaw in the majority's argument is the implicit assumption that no circumstances other than the *actual disclosure* of the facts surrounding the Chase Hall encounter could have provided SR with the motive to fabricate allegations of sexual assault. In my view, the timing, content, and circumstances surrounding SR's initial report to investigators all point to the making of an intrinsically unreliable statement, and provide sufficient grounds to question SR's motives in bringing her allegations against Appellant.

The record reveals that on 5 December 2005, Coast Guard Investigative Service (CGIS) agents interviewed Appellant – the other person who knew of the Chase Hall encounter – as part of a large-scale probe into allegations of his sexual misconduct at the Coast Guard Academy. SR was not interviewed by CGIS until almost two months later, on 9 February 2006, [8] at which time she discussed her allegations against Appellant but specifically refused to address the details of her secret. SR's self-censored initial report reveals that she had made the understandable but nevertheless calculated decision to limit the disclosure of information that could be harmful to her career. [9] Such a decision on SR's part following a considerable opportunity for reflection

---

[8] The record does not disclose whether SR voluntarily came forward or was first approached by CGIS.

[9] In her signed statement to CGIS dated 15 February 2006, SR also indicated, "A situation occurred, that I do not which [sic] to discuss, which led to rumors (which were grossly exaggerated)." (Appellate Ex. XVII, Enclosure 13 at 1; Appellate Ex. XXI at 2.) SR's clear attempt to downplay the rumors while at the same time refusing to address them indicates, in my mind at least, a concern for UCMJ or administrative action, if not a desire to deflect official interest in her own behavior.

necessarily calls into question the completeness and reliability of her contemporaneous allegations against Appellant.  Given the visibility of this dragnet investigation, the four-month delay between the Chase Hall encounter and SR's initial report, and her selective and continued withholding of facts that did not reflect favorably on her, it certainly was possible that SR fabricated or embellished details of her allegation against Appellant as a preemptive strike to avoid discipline, based on her *fear or expectation* that the true facts of their encounter, if not already known by investigators, likely would be discovered. [10]  Accordingly, the two statements were "parallel" not because anyone else knew the facts, but because of the illegality of the encounters and SR's fear that the true facts *could* be discovered.  Whether or not SR actually formed the motive to fabricate allegations against Appellant was an issue that that the members should have decided at trial.

Faced with a recalcitrant key witness who refused to testify at the motions hearing, the Government obtained a windfall through the erroneous application of M.R.E. 412.  At trial, SR provided conclusory testimony regarding her "bad situation" and Appellant's prior role in "squashing" career-threatening rumors, for the purpose of showing that she was coerced into unwanted sexual relations after Appellant impliedly threatened to reveal the truth about her secret.  On cross-examination, the defense was prohibited from addressing the facts of SR's "bad situation" or "secret," and similarly was prohibited from eliciting factual testimony that would inform the members that Appellant's efforts to "squash" and "suppress" rumors specifically meant spreading false information provided by SR, on SR's behalf. [11]  The result was that the Government was allowed to portray SR as an innocent victim of an extortionist plot, while the defense was not allowed to portray the witness as the architect of a scheme of false allegations intended to cover up her own misconduct.  I cannot agree that SR's privacy interest in shielding her alleged false statements from inquiry was so important that it justified denying Appellant the opportunity to pierce the veneer of the Government's conclusory assertions that were used to

---

[10] Given the ongoing CGIS investigation, there certainly would have been risks to SR in not stepping forward at all. SR likely had no way of knowing if Appellant had already reported their encounter to CGIS agents, leaving the possibility of an unrebutted, potentially career-threatening allegation of sexual misconduct in the hands of authorities. There also was the risk that Appellant might decide to cooperate with authorities and make a preemptive disclosure at a future time.  The argument that the record completely foreclosed the possibility of fabrication by SR would make more sense if SR had made a prompt and complete report of her allegations against Appellant at a time prior to the CGIS investigation.  That did not happen in this case.

convict him. I disagree with the notion that M.R.E. 412 was intended to allow the Government to prove the *corpus delicti* of the offenses through a witness indulging in euphemisms of doubtful legal sufficiency, particularly when they obscure facts that raise serious questions concerning her own credibility. [12]

When a constitutional violation is shown, a case must be reversed unless the error is harmless beyond a reasonable doubt. *United States v. Israel*, 60 M.J. 485, 488 (C.A.A.F. 2005). In deciding whether or not the erroneous exclusion of evidence is harmless, the court must consider "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on materials points, the extent of cross-examination otherwise permitted, and . . . the strength of the prosecution's case." *United States v. Moss*, 63 M.J. 233, 238 (C.A.A.F. 2006) (*quoting Bahr*, 33 M.J. 228 at 234 (*quoting Delaware v. Van Arsdall*, 465 U.S. 673, 684 (1986))). At trial, SR testified that on 19 October 2005, she had discussed her secret with Appellant in the mailroom; that Appellant had responded by indicating he needed "motivation" to keep "helping her" by continuing to suppress rumors that were circulating about her; that she had replied by asking whether by "motivation" he meant sex – a suggestion she says made him bristle; that Appellant later appeared in her room in Chase Hall on three separate occasions, where they posed together nude for a photograph and engaged in sexual activity; that the sexual encounter had in her mind provided the "motivation" Appellant needed to continue to suppress her secret; and that although she never told Appellant to stop, she participated only out of fear that he would not keep her secret.

Appellant presented his case upon his own testimony, stating in substance that while he met SR in the mailroom on 19 October, he never extorted sexual favors from her and denied saying that he needed "motivation" to continue suppressing rumors about SR's secret. Appellant

---

[11] The record of trial is devoid of any facts that would have explained to the members what these words actually meant.

[12] Certainly there were less burdensome remedies available to the military judge that could have protected the legitimate privacy interests of the victim in this case. The military judge could have fashioned an order restricting the defense from probing the intimate and personal details of the secret, focusing instead on the nature of the encounter * * * [REDACTED] * * *. In addition, the military judge could have closed the proceeding during testimony on the May 2005 incident to protect the victim from undue embarrassment or humiliation. The military judge also could have provided instructions to the members limiting the improper use of the evidence.

testified that they discussed getting together to pose for a nude photograph in her room; that after arriving in her room that evening, he took two digital photographs of them together, which he kept for safekeeping; and that he subsequently returned to her room on two additional occasions to exchange massages and perform consensual oral sodomy. Appellant admitted that SR was "tense" and "stressed" but claimed that the entire sexual encounter with SR was consensual. (R. at 1325.)

The difficulty accepting Appellant's account of a consensual encounter with SR is that it makes little intuitive sense given the lack of any evidence of a relationship or any rational explanation for its spontaneous nature. In short, Appellant's testimony is remarkable in its failure to explain SR's actions in the absence of at least some undue influence. In this failure, however, lies the major flaw in the military judge's M.R.E. 412 order. Appellant's account of an almost spontaneous consensual encounter with SR would be difficult to believe unless the members were informed of SR's prior false claim and were able to understand the depths of her concern for protecting her career. Only if informed of SR's prior scheme would the members have considered the possibility that her encounter with Appellant in October 2005 resulted not so much from coercion, but rather from her own calculation that she needed to ensure his continued cooperation in keeping her prior misconduct secret. Only then would the members have considered the possibility that SR might have fabricated a false claim of sexual assault against Appellant as a preemptive strike, out of fear that the encounter would be discovered through an ongoing investigation. The erroneous M.R.E. 412 order deprived Appellant of his best defense to the charges involving SR. *See United States v. Gray*, 40 M.J. 77, 80 (C.M.A. 1994) (military judge committed reversible error by excluding evidence of victim's past sexual behavior under M.R.E. 412; case came down to a credibility contest between witnesses, and the excluded evidence "could have made [the accused's] otherwise incredible explanation believable"); *see also United States v. Williams*, 37 M.J. 352, 360 (C.M.A. 1993) (accused's constitutional right to present evidence of victim's extramarital affair improperly excluded under M.R.E. 412; excluded evidence would have revealed motive to provide false testimony in order to protect affair, victim was key witness in government's case, and evidence of guilt was not overwhelming).

Here, the Government offered no other evidence to support SR's testimony that her sexual encounter with Appellant, which had many outward indicators of being consensual, actually resulted from coercion. The admission of evidence that SR had furnished Appellant with false information which he then used to counter a career-threatening rumor may well have cast doubt on the veracity of SR's testimony, and tipped the balance in favor of Appellant's version of events. Accordingly, I would find that the error in excluding this evidence was not harmless beyond a reasonable doubt.

I would affirm the findings of guilty to sodomy, attempted failure to obey a lawful order, and unauthorized absence. I would set aside the findings of guilty to extortion and indecent assault, and the sentence, and return the case to the Convening Authority for a rehearing.



For the Court,

Jane R. Lee
Clerk of the Court