**UNITED STATES, Appellee,**

**v.**

**Richard A. BAHR, Master Sergeant, U.S. Air Force, Appellant.**

**No. 65,665.**
**ACM 28274.**

U.S. Court of Military Appeals.

Argued April 29, 1991.

Decided Sept. 18, 1991.

For Appellant: *Captain Michael D. Burt* (argued); *Lieutenant Colonel Jeffrey R. Owens* (on brief).

For Appellee: *Captain James C. Sinwell* (argued); *Lieutenant Colonel Bren-*

da J. Hollis and *Major Kingston E. Smith*, USAFR (on brief).

### Opinion of the Court

SULLIVAN, Chief Judge:

On December 5 and 6, 1989, appellant was tried by members at a general court-martial at Mountain Home Air Force Base, Idaho. He was charged with sodomy upon a female under 16 years of age, in violation of Article 125, Uniform Code of Military Justice, 10 USC § 925, and committing indecent acts with this same female, in violation of Article 134, UCMJ, 10 USC § 934. Despite his pleas, he was found guilty of one specification of committing indecent acts with this female, his daughter, on divers occasions. He was sentenced to a bad-conduct discharge, 30 months' confinement, and reduction to the grade of E–4. The convening authority approved the sentence. On October 12, 1990, the Court of Military Review affirmed the findings and sentence. 31 MJ 807 (1990).

We granted review[1] on the following issues:

#### I

WHETHER THE MILITARY JUDGE'S ERRONEOUS EXCLUSION OF DEFENSE EXHIBIT E SUBSTANTIALLY PREJUDICED THE RIGHTS OF APPELLANT.

#### II

WHETHER THE MILITARY JUDGE'S ERRONEOUS LIMITATION OF TRIAL DEFENSE COUNSEL'S CROSS–EXAMINATION OF THE ACCUSATRIX SUBSTANTIALLY PREJUDICED THE RIGHTS OF APPELLANT.

We hold that the military judge improperly limited cross-examination of the prosecutrix by precluding defense questions concerning her diary, a prior false rape claim, and two prior false claims concerning her health. U.S. Const. amend. VI; *Delaware v. Van Arsdall*, 475 U.S. 673, 678–79, 106 S.Ct. 1431, 1434–35, 89 L.Ed.2d 674 (1986); *see* Mil.R.Evid. 608(c), Manual for Courts-Martial, United States, 1984. We also hold these constitutional errors were not harmless beyond a reasonable doubt and require a rehearing. *See generally Olden v. Kentucky*, 488 U.S. 227, 233, 109 S.Ct. 480, 484, 102 L.Ed.2d 513 (1988).

The record of trial shows the following. Appellant's 14–year–old daughter, Tina Bahr, testified that he attempted to have sexual intercourse with her and that he orally and anally sodomized her in Spain in 1988. Tina also claimed that he had fondled her breasts after the family had moved to Mountain Home Air Force Base, Idaho, in 1988. She testified that appellant said he came to her because he was not getting attention or love from his wife. Evidence was also admitted that appellant had told a health worker "that he had molested" his daughter because of inattention from his wife.

Appellant at trial denied Tina's accusations. He claimed that these incidents involved ordinary hugs and kisses rather than the acts of which Tina had accused him. He further testified that he had used the term "molest" to the health care worker because he was concerned that hugging his daughter had hurt her feelings. In response to a question from one of the members, the health worker had earlier conceded that appellant "did not specify" "what type of molestation was involved."

To show Tina's motive to misrepresent, defense counsel fought admission of certain extracts from her diary.[2] These state-

---

1. Oral argument in this case was held on April 29, 1991, at the United States Air Force Academy in Colorado before over 1000 students, military officers, dependents, attorneys, and members of the civilian community of Colorado Springs.

2. Prior to this court-martial, trial counsel objected to admission of defense exhibits which were selected extracts from the diary of Tina Bahr. Defense counsel asserted that these exhibits were extrinsic evidence of the prosecutrix' motive to misrepresent and were admissible under Mil.R.Evid. 608(c), Manual for Courts–Martial, United States, 1984. The military judge ruled this evidence was irrelevant and not otherwise shown to be admissible hearsay.

ments showed that she was dissatisfied with her home life and disliked her mother intensely. Representative samples of these extracts are as follows:

### January 24

I always hate my Mom because She sucks like terd.

### February 9

My mom is a lunatic, a bastard, and a fuckin bitch, she's so stupid. *What a Witch.*

### April 24

*I Hate My Mom ... Bitch ...* asshole *... a lot of times.*

### April 26

Oh, so now she has to call me a damn girl, so what. She can boil water, I'll [ ] probably attempt suicide! That's it take a bunch of pills until I die....

### June 19

I hate her guts she's so stupid and dumb it's pathetic. She never lets me do anything. What a stupid Christmas. I hope she breaks her legs. Hah, hah. I Hate Her....Bitch.

### July 2

She's a bastard, and a bitch I have more sponsibility [sic].

### August 12

My mom sucks [illegible].

### September 12

Shove it You bitch! What an over-grown ape. I never get to do anything.

### November 19

Dear Diary,

Hi, what a boring day, my mother is always yelling her brains out at me like I'm a dog. My father always gets on my nerves by saying I don't want to hear it anymore. Just because they had their time of becoming a 13 yr. old doesn't mean I don't get to. I mean they act like it's no big deal to me. Well it is, and no one going to change that.

Love,

Tina

### December 13

My mom and Dad are pests today, yesterday, my mother almost pushed me down in front of public. How embarrassing.

I'll get her back when I'm 18 yrs. old.

### December 20

Today my fucking bitch of a Mother called me a sick girl, well do I have some news for her ... she sucks like cuky [sic] and eats barf, my brother whos [sic] 11 yrs. old always tattles

### December 21

*... Mom ... She Sucks like Crud... A fuckin Bitch*

### MEMORANDA

My mother is a bitch, a mother fucker 2 ball [illegible]. I hope she dies ...

Defense counsel argued that the prosecutrix was testifying falsely against appellant because of her deep hatred for her mother, appellant's wife, and her desire to leave their home. The military judge denied defense counsel permission to introduce these diary extracts on the basis that they were irrelevant hearsay.[3] Defense counsel later cross-examined Tina. She denied that she knew her story would cause her to be removed from the home, that she wanted to be removed from the home because she hated her mother, and that she knew her story would receive a lot of attention. She admitted that she had "lied to get a lot of attention."

---

**3.** The military judge expressed concern that the prosecutrix' diaries were inadmissible hearsay. *Cf.* Mil.R.Evid. 801(d)(1). We note, however, that these diary extracts were offered to show the prosecutrix' state of mind toward her mother. *See* Mil.R.Evid. 803(3).

Defense counsel then sought to cross-examine Tina about this diary and about a time she had falsely told a friend that she had been raped by two soldiers in Spain.[4] Furthermore, defense counsel sought to question Tina about having falsely told her classmates on one occasion that she had contracted breast cancer and on another occasion that she had contracted leukemia. Finally, defense counsel sought to cross-examine Tina regarding two instances where she had advised friends to turn family members in for child sexual abuse. In the first instance, Tina purportedly advised Maria Lewis to turn in her uncle or father. The other instance concerned Tina's advice to Mary Whitney to report her father and grandfather for sexual abuse.

Defense counsel offered essentially two reasons for this cross-examination. He noted generally that his purpose was trying to show that Tina had "lied to get out of the home and she lies for attention." He explained that the diary would show Tina's "hatred" of her mother and that his objective was to attack Tina's credibility. He also explained that Tina had told him that her claims about contracting leukemia and breast cancer and of being raped were all lies that she had uttered to attract "attention." Regarding Tina's advice to Maria Lewis that she report her relatives for child abuse, defense counsel remarked that he thought it was "relevant for the members to know that she knows the results of reporting the abuse." The military judge, as noted later in this opinion, barred questioning about the diaries, the false claims, and the Maria Lewis incident.

On appeal, the Court of Military Review held that the ruling of the judge that defense counsel could not admit the diary or question her about it was error. However, that court did not otherwise find that the military judge erred in limiting the scope of defense counsel's cross-examination. In affirming appellant's conviction and sen-

tence, the court below found that excluding use of the diary did not cause substantial prejudice. 31 MJ at 809.

I

The first question granted review is whether the Court of Military Review erred in holding the military judge's exclusion of certain pages of the prosecutrix' diary was harmless error. The court below affirmed appellant's conviction on the basis that the erroneous exclusion of "extrinsic [impeachment] evidence did not materially prejudice the substantial rights of the appellant. Article 59(a), UCMJ, 10 USC § 859(a); *United States v. Banker*, 15 MJ 207, 212 (CMA 1983)." 31 MJ at 809. However, earlier in that opinion, that court also found that "[t]he military judge erred by not permitting the defense to cross-examine the girl concerning the diary entries, which were directly related to the defense theory of the case." *Id.* at 808. This was not only error under Mil.R.Evid. 608(c), but constitutional error as well, requiring reversal unless the Government showed such "error was harmless beyond a reasonable doubt." U.S. Const. amend. VI. *See generally Delaware v. Van Arsdall*, 475 U.S. at 684, 106 S.Ct. at 1438.

The failure of the Court of Military Review to test the latter confrontational error for prejudice is alone sufficient to justify reversal of the decision below. However, the second granted issue in this case asks whether the military judge prejudicially erred in limiting trial defense counsel's cross-examination of the prosecutrix on matters other than the diary entries. In this context, the critical inquiry becomes— What was the full extent of the judge's improper restriction of appellant's Sixth Amendment right to cross-examine the prosecutrix, Tina Bahr? Only after assessing error on some or all these grounds can we properly address the prejudice question

---

**4.** Trial counsel also made a motion *in limine* to exclude any evidence that the prosecutrix encouraged two children to turn their fathers in for child abuse or that a hearing be held before such evidence was offered at trial. The military

judge directed defense counsel to ask for an Article 39(a), Uniform Code of Military Justice, 10 USC § 839(a), session before proffering such evidence.

already raised in the first granted issue. *See also Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973).

## II

The military judge at trial sustained several objections by the prosecution to defense counsel's cross-examination of the prosecutrix, Tina Bahr. He ruled as follows:

MJ: The objection, as to asking a question about Mary Whitney, is overruled. You can ask that.

The objection, as to asking *questions about Maria Lewis* reporting abuse, is sustained. *It's irrelevant.*

*Questions pertaining to whether or not the witness hated her mother have been asked and answered and my ruling is you may not introduce extrinsic evidence to contradict that, besides I think it's irrelevant.*

MJ: You may ask the witness whether or not she encouraged Tina Johnson to lie to the OSI since that is concerned with this case and is relevant to show to what degree the witness would be willing to attempt to influence the outcome of the investigation or the court results.

*Questions of the witness concerning prior misstatements of her having breast cancer or leukemia, or about being raped by soldiers, is irrelevant* but would suppose, I suppose, furnish the basis for a witness to testify as to opinion as to character for truthfulness. But, of course, you can't ask the character witness those specifics.

DC: That's correct.

MJ: So, from the matters you brought up at this 39(a) session, you may ask the witness her knowledge of what happened after Mary Whitney reported abuse—that is, what happened to Mary Whitney, and you may ask her whether or not she attempted to encourage Tina Johnson to lie to the OSI in this case. That is more probative of this case.

If there is nothing further, this 39(a) session is terminated.

(Emphasis added.)

The initial question before us is whether these rulings by the military judge unreasonably restricted appellant's right to cross-examination of this witness at trial as guaranteed by the Sixth Amendment. *See generally Pennsylvania v. Ritchie*, 480 U.S. 39, 53–54, 107 S.Ct. 989–999, 1000, 94 L.Ed.2d 40 (1987). This standard for assessing error, articulated in *Delaware v. Van Arsdall*, 475 U.S. at 678–79, 106 S.Ct. at 1434–35, states:

Of particular relevance here, "[w]e have recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Davis [v. Alaska], supra,* [415 U.S. 308] at 316–317 [94 S.Ct. 1105, at 1110–11, 39 L.Ed.2d 347 (1974)] (citing *Greene v. McElroy*, 360 U.S. 474, 496 [79 S.Ct. 1400, 1413, 3 L.Ed.2d 1377] (1959)). It does not follow, of course, that the Confrontation Clause of the Sixth Amendment prevents a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness. On the contrary, *trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.*

(Emphasis added.)

The first line of proposed questioning rejected by the military judge concerned the prosecutrix' counseling of a friend, Maria Lewis, to report her relatives for sexual abuse. Defense counsel argued that evidence of such counseling was relevant to show the prosecutrix' knowledge that reporting sexual abuse by parents would secure removal of the reporting child from the home. *See* Mil.R.Evid. 401 and 402. However, he acknowledged that the prose-

cutrix did not know whether Maria took her advice and reported abuse by relatives or whether Maria was removed from her home. Moreover, defense counsel's subsequent concession of the irrelevance of his proffered evidence on this ground moots further consideration of the judge's ruling on these questions.

The second line of proposed questioning rejected by the military judge concerned the prosecutrix' diary entries reflecting her deep hatred of her mother. The military judge first ruled that the prosecutrix had already denied hating her mother when questioned by defense counsel (*see* Mil.R. Evid. 403) and that extrinsic evidence contradicting her testimony on this point was not admissible. *See* Mil.R.Evid. 608(b).[5] In addition, he ruled that the diary entries were irrelevant. *See* Mil.R.Evid. 401 and 402.

 We first note that evidence adduced on cross-examination of the witness sought to be impeached is not extrinsic evidence. *See United States v. Banker*, 15 MJ at 211. Moreover, as noted by the court below, these diary questions were asked to show a motive on the prosecutrix' part for falsely testifying against appellant. *See* Mil.R.Evid. 608(c). There is no extrinsic-evidence limitation on evidence offered for this purpose. This evidence was not offered as inconsistent statements by this witness (Mil.R.Evid. 613(b)) or to show her lack of truthfulness by reason of prior falsehoods. *See* Mil.R.Evid. 608(b). As a

result, the defense was not required to accept the prosecutrix' denial of her hatred for her mother, and circumstantial evidence of such a state of mind towards her mother could be adduced by the defense either on cross-examination of the prosecutrix or by admission of the diary entries themselves. *See United States v. Spindle*, 28 MJ 35 (CMA 1989); *United States v. Hunter*, 21 MJ 240, 242 (CMA), *cert. denied*, 476 U.S. 1142, 106 S.Ct. 2250, 90 L.Ed.2d 696 (1986). Finally, appellant was the husband of the prosecutrix' mother, and it was not unreasonable to suggest that the prosecutrix might vent her hatred of her mother by hurting her mother's husband. The admissibility standards of the Sixth Amendment and Mil.R.Evid. 401, 402, and 403 were clearly met in this case. *See generally United States v. Banker, supra* at 212.

██ The third line of questioning barred by the judge concerned the prosecutrix' admitted prior false statements to her classmates that she had been raped and suffered from various terminal diseases. Again, it must be noted that these questions were not proposed to show prior instances of misconduct by the prosecutrix which evidenced her character for untruthfulness. Mil.R.Evid. 608(b). Instead, they were proposed for the purpose of showing that the prosecutrix had a second motive for testifying falsely in this case against appellant, *i.e.*, to call attention to herself. The defense's proffer, especially the false

---

**5.** Mil.R.Evid. 608 provides in full:

> *Rule 608. Evidence of character, conduct, and bias of witness.*
> (a) *Opinion and reputation evidence of character.* The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.
> (b) *Specific instances of conduct.* Specific instances of conduct of a witness, for the purpose of attacking or supporting the credibility of the witness, other than conviction of crime as provided in Mil.R.Evid. 609, may not be

> proved by extrinsic evidence. They may, however, in the discretion of the military judge, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning character of the witness for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified. The giving of testimony, whether by an accused or by another witness, does not operate as a waiver of the privilege against self-incrimination when examined with respect to matters which relate only to credibility.
> (c) *Evidence of bias.* Bias, prejudice, or any motive to misrepresent may be shown to impeach the witness either by examination of the witness or by evidence otherwise adduced.

rape claim in Spain, rationally supported the defense's theory of impeachment (*see United States v. Banker, supra* at 212) and clearly did not violate the reasonableness standard of *Delaware v. Van Arsdall, supra.*

## III

■ The final question we must decide in this case is the remedy which should be afforded appellant as a result of these repeated infringements of his constitutional right to confrontation. *See generally Delaware v. Van Arsdall,* 475 U.S. at 684, 106 S.Ct. at 1438, where the Supreme Court said:

> The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case. *Cf. Harrington* [*v. California*], 395 U.S.

[250], at 254 [89 S.Ct. 1726, at 1728, 23 L.Ed.2d 284 (1969)]; *Schneble v. Florida,* 405 U.S. [427], at 432 [, 92 S.Ct. 1056, at 1059–60, 31 L.Ed.2d 340 (1972)].

Under this trial-utility standard, reversal of appellant's conviction is clearly warranted.

The testimony provided by Tina Bahr, the prosecutrix in this case, was the heart of the Government's case. Her testimony was not cumulative of any other evidence introduced at this trial, and it went well beyond appellant's bare pretrial admission that he "molested his daughter." In addition, there was no other witness or physical evidence corroborating the prosecutrix' claim that indecent acts were committed. Finally, although the prosecutrix' credibility was attacked on character grounds, this general evidence clearly paled before more particular and more compelling evidence of motives adduced directly from the prosecutrix herself. Appellant's trial was rendered unfair by these exclusions, and a rehearing is warranted. *See Olden v. Kentucky,* 488 U.S. at 233, 109 S.Ct. at 484.

The decision of the United States Air Force Court of Military Review is reversed. The findings and sentence are set aside. The record of trial is returned to the Judge Advocate General of the Air Force. A rehearing may be ordered.

Judge COX and Senior Judge EVERETT concur.