**UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS**

**UNITED STATES**

**v.**

**Technical Sergeant JEREL K. GABRIEL**
**United States Air Force**

**ACM 38459**

**22 January 2015**

Sentence adjudged 14 June 2013 by GCM convened at Joint Base Lewis-McChord, Washington. Military Judge: William C. Muldoon, Jr.

Approved Sentence: Dishonorable discharge, confinement for 36 months, forfeiture of all pay and allowances, and reduction to E-1.

Appellate Counsel for the Appellant: Captain Jeffrey A. Davis.

Appellate Counsel for the United States: Major Roberto Ramirez and Gerald R. Bruce, Esquire.

Before

MITCHELL, WEBER, and CONTOVEROS
Appellate Military Judges

OPINION OF THE COURT

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under Rule of Practice and Procedure 18.4.

WEBER, Judge:

A panel of officer members at a general court-martial convicted the appellant, contrary to his pleas, of three specifications of sexual assault in violation of Article 120, UCMJ, 10 U.S.C. § 920.[*] The members sentenced the appellant to a dishonorable

---

[*] The charged events took place on 6 August 2012, meaning the appellant was charged and convicted under the current version of Article 120, UCMJ, 10 U.S.C. § 920, which applies to offenses committed on or after 28 June 2012. *See Manual for Courts-Martial, United States*, Part IV, ¶ 45 (2012 ed.).

discharge, confinement for 36 months, forfeiture of all pay and allowances, and reduction to E-1. The convening authority approved the sentence as adjudged.

On appeal, the appellant alleges the military judge abused his discretion by excluding evidence of a prior false allegation made by the named victim in this case. In addition, pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), the appellant alleges his convictions are factually insufficient, his sentence is inappropriately severe, and unlawful command influence impacted his court-martial. We find no error materially prejudicial to a substantial right of the appellant and affirm.

*Background*

The charged acts all took place on the morning of 6 August 2012. The appellant and BG both attended a party at a friend's house the previous night where they consumed alcohol. BG and the appellant demonstrated an interest in each other during the party. BG willingly went for a walk with the appellant and kissed him, at which time she "got the spins" from alcohol consumption and vomited. The appellant escorted her back to the house, where BG fell asleep on a couch. There is no allegation that any sexual activity occurred at that time.

The appellant knew BG needed to be at work by 0900 hours. He woke her up at around 0700 hours. The appellant and BG engaged in consensual kissing. The appellant placed his hand under BG's shirt and touched her breasts. BG stated she did not want this contact but allowed it to occur up to a point. However, when the appellant escalated the sexual activity further by pulling down her pants and underwear, she said "no" repeatedly and tried to grab her pants to keep them up. The appellant continued to partially remove her pants and underwear and sexually assaulted her in various ways as she told him to stop and physically attempted to stop the contact and extricate herself from the situation. The appellant made derogatory remarks toward her as he sexually assaulted her. Eventually, BG was able to leave the house.

BG promptly reported the incident to law enforcement and underwent a sexual assault examination. Law enforcement officials interviewed the appellant after advising him of his rights. The appellant denied sexually assaulting BG but did make some incriminating statements that were introduced at trial.

*Exclusion of BG's Prior Statements*

More than two years before the charged acts, BG was married to another man. Due to some issues in the marriage, the couple explored with a counselor possible reasons for BG's husband's lack of interest in physical intimacy. Soon afterward, the couple was undergoing a divorce when BG observed their young son in bed without anything on from the waist down. BG's husband's hand was under the blanket. BG

asked her husband what was happening, and her husband became defensive and accused her of having her mind "in the gutter." This, combined with some behavior BG had observed when her husband was around BG's daughter, caused BG to contact a police officer. BG testified in motions practice that she contacted the police officer to obtain a professional's perspective about whether her husband's behavior seemed suspicious, not to file a complaint. She also testified that she was seeking an explanation for her husband's lack of desire in physical intimacy. After speaking with the police officer, she declined to pursue the matter further, and the couple was able to resolve child custody issues on their own.

The Government moved in limine to exclude evidence of BG's statements to the police department about her husband's behavior. The Government asserted this evidence had no tendency to affect BG's credibility in the instant case, citing the differences between the two instances. The defense did not file a written opposition but orally argued that pursuant to *United States v. Bahr*, 33 M.J. 228 (C.M.A. 1991), BG's communication to a police officer constituted a false report that related to BG's credibility. Trial defense counsel also asserted this evidence was relevant to the defense's theme that BG tended to exaggerate and overreact to situations.

A military judge's decision to grant a motion to suppress evidence is reviewed for an abuse of discretion. *United States v. Freeman*, 65 M.J. 451, 453 (C.A.A.F. 2008).

> "Abuse of discretion" is a term of art applied to appellate review of the discretionary judgments of a trial court. An abuse of discretion occurs when the trial court's findings of fact are clearly erroneous or if the court's decision is influenced by an erroneous view of the law. *See United States v. Rader*, 65 M.J. 30, 32 (C.A.A.F. 2007). "Further, the abuse of discretion standard of review recognizes that a judge has a range of choices and will not be reversed so long as the decision remains within that range." *United States v. Gore*, 60 M.J. 178, 187 (C.A.A.F. 2004) (citing *United States v. Wallace*, 964 F.2d 1214, 1217 n.3 (D.C. Cir. 1992)).

*Freeman*, 65 M.J. at 453.

After receiving evidence and hearing argument on this issue, the military judge issued the following findings of fact:

> That allegation was made more than two years prior to the . . . allegations in this court-martial. Those allegations have no tie to this accused; the alleged victim in this case did make a report to local law enforcement of conduct by her then-

husband; she was undergoing divorce proceedings at that time; she did not pursue any charges against her now ex-husband because of those allegations.

The record reveals some dispute over whether BG's statements to law enforcement about her now ex-husband constituted a "report." Nonetheless, given the ambiguity on this point, the military judge's finding of fact that BG did make a report to local law enforcement is not clearly erroneous. Similarly, none of the military judge's other findings of fact are clearly erroneous.

Specific instances of a witness's conduct generally may not be proved by extrinsic evidence. Mil. R. Evid. 608(b). However, in the discretion of the military judge, they may be inquired into on cross-examination of the witness if probative of truthfulness or untruthfulness. *Id.* In addition, Mil. R. Evid. 608(c) allows for witness examination or extrinsic evidence to show bias, prejudice, or any motive to misrepresent.

The right to cross-examination is broad, and the rules of evidence should be read to allow liberal admission of bias-type evidence. *United States v. Moss*, 63 M.J. 233, 236 (C.A.A.F. 2006) (citing *United States v. Williams*, 40 M.J. 216, 218 (C.M.A. 1994)). In general, "the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Davis v. Alaska*, 415 U.S. 308, 316–17 (1974) (citing *Greene v. McElroy*, 360 U.S. 474, 496 (1959)). However, cross-examination must comply with applicable rules of evidence, and a trial judge may set reasonable limits on cross-examination that intends to attack a witness's credibility based on concerns such as harassment, prejudice, confusion of issues, witness safety, repetitiveness, or marginal relevancy. *United States v. Velez*, 48 M.J. 220, 226 (C.A.A.F. 1998) (citing *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)); *United States v. Gonzalez*, 16 M.J. 423, 425 (C.M.A. 1983). While evidence of a prior false allegation of sexual assault might impact a witness's credibility, "[t]he mere filing of a complaint is not even probative of the truthfulness or untruthfulness of the complaint filed." *Velez*, 48 M.J. at 227 (citing *United States v. Morrison*, 98 F.3d 619, 628 (D.C. Cir. 1996)).

In *United States v. Bahr*, 33 M.J. 228, 234 (C.M.A. 1991), our superior court found error when the military judge barred cross-examination of the victim regarding a "prior false rape claim" when the defense theory of admissibility was that the false claim showed the victim had a motive to testify falsely to call attention to herself. In *Bahr*, the named victim admitted she had made prior false statements to her classmates that she had been raped and suffered from various terminal diseases. *Id.* at 231. The court held that the defense sought to question the named victim about these prior allegations "for the purpose of showing that [she] had a second motive for testifying falsely in this case against appellant, i.e., to call attention to herself." *Id.* at 233. The court held the

defense's proffer of this information "rationally supported the defense's theory of impeachment" and did not violate the reasonableness standard of *Van Arsdall*. *Id.* at 234.

We see the instant case as easily distinguishable from *Bahr* and find no abuse of discretion in the military judge's decision to exclude this line of questioning. First, there is little to no evidence that BG's statements to police about her now ex-husband constituted a "false" report. She reported to police what she saw and asked police if she should be concerned. She then elected not to pursue the matter further, but there is no evidence that she admitted her earlier statements were false or that her statements were in fact false. Rather, it appears that she merely realized her perception of what was happening was influenced by the emotion of the moment and her impending divorce; upon further reflection she chose to believe her husband did not commit the actions of which she initially suspected him. This is not the same as the admitted prior false statements at issue in *Bahr*. Therefore, while at least part of the defense theory in this case was the same as that in *Bahr* (that the named victim had a motive to call attention to herself), the prior statements by BG to police have little to no tendency to show that she possessed this motive or a tendency to do so.

In addition, the military judge correctly noted that the prior statements bore little resemblance to the instant case. The prior statements concerned a different person's possible actions toward a child, while the instant case involved the appellant's actions toward her. BG made the prior statements in the throes of an emotional time due to her impending divorce and the uncertainty about her husband's reason for his lack of interest in physical intimacy; in the instant case, BG apparently was under no such stress until the appellant committed the charged acts. In the prior situation, BG never sought legal action against her now ex-husband and quickly dropped the matter. In the instant case, BG immediately reported the matter as a crime, underwent a sexual assault examination, and saw the matter through. The military judge was well within his discretion to exclude cross-examination on this topic due to the marginal to non-existent relevancy of BG's prior statements about an entirely different matter. We also note that the military judge did state he would permit the defense to raise this matter in cross-examination if the Government introduced evidence as to BG's character for truthfulness. Finally, even assuming the military judge should have permitted the defense to cross-examine BG about this matter, we are fully confident this would have had no impact on the fact-finder for the reasons outlined above.

*Factual Sufficiency*

The appellant contends that his sexual assault convictions are factually insufficient. He cites BG's alleged lack of credibility and the defense witnesses who testified as to his character for truthfulness and corroborated some aspects of his account on the night before the charged acts.

Under Article 66(c), UCMJ, 10 U.S.C. § 866(c), we review issues of factual sufficiency de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006). The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we] are [ourselves] convinced of the accused's guilt beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987). Review of the evidence is limited to the entire record, which includes only the evidence admitted at trial and exposed to the crucible of cross-examination. Article 66(c), UCMJ; *United States v. Bethea*, 46 C.M.R. 223, 224–25 (C.M.A. 1973).

Having reviewed the entire record, we conclude the findings are factually sufficient. BG's testimony was sufficiently detailed and consistent to support the members' findings. She promptly reported the incident, and her account remained consistent throughout the investigative and court-martial processes. In addition, a medical examination at least partially supported her account. The defense attempted to demonstrate that BG had a tendency to exaggerate matters, but this attempt fell short. The defense was able to successfully rebut some statements BG made about events the night before the charged acts. However, as was the case at trial, this does not cause us to disbelieve BG's consistent and credible account of what occurred on the morning in question. We agree with the members that the appellant is guilty of the charged offenses.

*Sentence Appropriateness*

The appellant also asserts his sentence is inappropriately severe when compared to other court-martial sentences he cites.

We "may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as [we find] correct in law and fact and determine[], on the basis of the entire record, should be approved." Article 66(c), UCMJ. "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offenses, the appellant's record of service, and all matters contained in the record of trial." *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009). Although we are accorded great discretion in determining whether a particular sentence is appropriate, we are not authorized to engage in exercises of clemency. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010).

In exercising sentence appropriateness review, "[t]he Courts of Criminal Appeals are required to engage in sentence comparison only 'in those rare instances in which sentence appropriateness can be fairly determined only by reference to disparate sentences adjudged in closely related cases.'" *United States v. Sothen*, 54 M.J. 294, 296 (C.A.A.F. 2001) (quoting *United States v. Ballard*, 20 M.J. 282, 283 (C.M.A. 1985)). An appellant bears the burden of demonstrating that any cited cases are "closely related" to the appellant's case and the sentences are "highly disparate." *United States v. Lacy*,

50 M.J. 286, 288 (C.A.A.F. 1999). Closely related cases include those which pertain to "coactors involved in a common crime, servicemembers involved in a common or parallel scheme, or some other direct nexus between the servicemembers whose sentences are sought to be compared." *Id.* If the appellant meets his or her burden to demonstrate closely related cases involve highly disparate sentences, the Government "must show that there is a rational basis for the disparity." *Id.*

Applying these standards to the present case, we do not find the appellant's sentence inappropriately severe. We have given individualized consideration to this particular appellant, the nature and seriousness of the offenses, the appellant's record of service, and all other matters contained in the record of trial. The appellant repeatedly sexually assaulted a woman who had just awoken. She may have consented to a certain level of physical activity with the appellant, but as the activity progressed, she made it clear she did not want it to escalate further. The appellant ignored her verbal and physical attempts at resistance for his own gratification. Despite the appellant's lengthy positive service record, his sentence remains appropriate. The sexual assault cases the appellant cites are not closely related to his own, as they involve no direct nexus between the servicemembers. Nonetheless, we have considered these cases as part of our overall sense as to considerations of uniformity and even-handedness in sentencing. *See Sothen*, 54 M.J. at 296; *United States v. Wacha*, 55 M.J. 266, 267 (C.A.A.F. 2001). The appellant's sentence remains appropriate.

*Unlawful Command Influence*

The defense moved to dismiss the charges based on unlawful command influence, along with defective preferral and referral of charges. The appellant does not re-raise the defective preferral/referral issue on appeal, concentrating instead on the unlawful command influence issue. His motion at trial did not focus on any wrongdoing in this case; rather, it broadly asserted a "toxic" atmosphere exists with regard to sexual assault allegations in the military, and this atmosphere "pervades the entire process, from the initiation of an investigation to appellate review and all of the steps in between." His assignment of error on this issue is substantively identical to his motion at trial.

"Where the issue of unlawful command influence is litigated on the record, the military judge's findings of fact are reviewed under a clearly-erroneous standard, but the question of command influence flowing from those facts is a question of law that this Court reviews *de novo*." *United States v. Wallace*, 39 M.J. 284, 286 (C.M.A. 1994).

Article 37(a), UCMJ, 10 U.S.C. § 837(a), states in relevant part: "No person subject to this chapter may attempt to coerce or . . . influence the action of a court-martial or any other military tribunal or any member thereof, in reaching the findings or sentence in any case . . . ." "The term 'unlawful command influence' has been used broadly . . . to cover a multitude of situations in which superiors have unlawfully controlled the actions

of subordinates in the exercise of their duties under the UCMJ." *United States v. Hamilton*, 41 M.J. 32, 36 (C.M.A. 1994) (citing *United States v. Hawthorne*, 22 C.M.R. 83 (C.M.A. 1956)). Generally, unlawful command influence consists of two types: accusatory (preferral, forwarding, and referral of charges) and adjudicative (interference with witnesses, judges, members, and counsel). *United States v. Weasler*, 43 M.J. 15, 17–18 (C.A.A.F. 1995).

At trial, the burden of raising the issue of unlawful command influence rests with trial defense counsel. *United States v. Biagase*, 50 M.J. 143, 150 (C.A.A.F. 1999). The defense must: (1) "show facts which, if true, constitute unlawful command influence," and (2) show "the alleged unlawful command influence has a logical connection to the court-martial, in terms of its potential to cause unfairness in the proceedings." *Id.* To meet the threshold for raising this issue, trial defense is required to present "some evidence" of unlawful command influence. *Id.* If the defense meets that burden to raise the issue, the burden shifts to the Government, who must: "(1) disprove the predicate facts on which the allegation of unlawful command influence is based; (2) persuade the military judge that the facts do not constitute unlawful command influence; or (3) prove at trial that the unlawful command influence will not affect the proceedings." *United States v. Simpson*, 58 M.J. 368, 373 (C.A.A.F. 2003) (quoting *Biagase*, 50 M.J. at 151) (internal quotation marks omitted). "Whichever tactic the Government chooses, the quantum of proof is beyond a reasonable doubt." *Id.* (quoting *United States v. Stoneman*, 57 M.J. 35, 41 (C.A.A.F. 2002)) (internal quotation marks omitted).

The military judge heard evidence and argument on the defense's broad unlawful command influence motion. He issued extensive findings of fact and thoroughly analyzed this issue, denying the defense's motion. We can add nothing substantive to his analysis of this issue, but to briefly summarize, he found: the defense largely failed to introduce evidence to support its contentions, comments from Congress and senior leaders about sexual assault in the military contained broad generalities about this issue and no comments were specifically made about this case, and the convening authority's affidavit stated he took his role very seriously and any comments by senior government officials had no impact on him. The military judge analyzed the defense motion for both apparent and actual unlawful command influence, and covered each relevant stage of the court-martial process. He allowed wide latitude in questioning potential members about their knowledge about any comments by senior government officials concerning sexual assault in the military, and indicated he would liberally grant challenges for cause on this issue. However, the defense did not challenge a single member based on this issue. We find no abuse of discretion in the military judge's thorough, well-reasoned ruling. Because the appellant has simply re-raised his trial motion without alleging anything new on appeal, we see no reason to suspect unlawful command influence impacted the appellant's court-martial.

*Conclusion*

The approved findings and the sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant regarding the affirmed charges and specifications occurred.  Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c).  Accordingly, the findings and the sentence are **AFFIRMED**.

FOR THE COURT

STEVEN LUCAS
Clerk of the Court