# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

### v.

### Staff Sergeant DANIEL P. TROY
### United States Air Force

### ACM S32174

### 3 April 2015

Sentence adjudged 24 May 2013 by SPCM convened at Misawa Air Base, Japan. Military Judge: Natalie D. Richardson.

Approved Sentence: Confinement for 12 months, forfeiture of $1,010.00 pay per month for 12 months, and reduction to E-1.

Appellate Counsel for the Appellant: Major Anthony D. Ortiz and Major Thomas A. Smith.

Appellate Counsel for the United States: Major Daniel J. Breen; Major Mary Ellen Payne; and Gerald R. Bruce, Esquire.

Before

HECKER, SARAGOSA, and TELLER
Appellate Military Judges

OPINION OF THE COURT

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.

HECKER, Senior Judge:

A special court-martial composed of officer members convicted the appellant, contrary to his pleas, of dereliction of duty; operating a vehicle while impaired; wrongfully using, distributing, and introducing a controlled substance; and soliciting another to use a controlled substance, in violation of Articles 92, 111, 112a, and 134, UCMJ, 10 U.S.C. §§ 892, 911, 912a, 934. The court sentenced him to confinement for 12 months, forfeiture of $1,010.00 pay per month for 12 months, and reduction to E-1. The convening authority approved the sentence as adjudged.

On appeal, the appellant contends the military judge erred when she (1) found a presumptive drug test met the requirements for admissibility; (2) admitted a bank statement into evidence; (3) prevented the defense from questioning witnesses about the potential collusion of the appellant's co-actors; and (4) admitted statements made by the appellant without rights advisement. He also contends (5) the cumulative error of the improperly admitted evidence requires the findings to be set aside and (6) the evidence is factually and legally insufficient to sustain his conviction for operating a vehicle while impaired. Finding no error that materially prejudices a substantial right of the appellant, we affirm the findings and sentence.

*Background*

The offenses in this case stemmed from the appellant's alleged involvement with multiple controlled substances, namely dihydrocodeine (found in Bron), oxycodone (found in Percocet), clonazepam (found in Klonopin), lorazepam (found in Ativan), and dextroamphetamine (found in Adderall). Another military member used drugs with the appellant while two others were present when he did so, and all three testified at the appellant's trial under a grant of immunity.

The appellant's involvement with controlled substances came to the attention of law enforcement in January 2013 after Senior Airman (SrA) BT self-identified his own abuse of Bron while seeking help for problems he was experiencing. As part of that process, SrA BT stated he had used Bron with the appellant. Bron is an over-the-counter cough medicine sold in Japan that contains dihydrocodeine, an opiate. This led the appellant's first sergeant to issue a no contact order, prohibiting the appellant from having contact with SrA BT and two other Airmen who were implicated in his involvement with drugs.

SrA BT testified at the appellant's court-martial that he and the appellant first used drugs together in March 2012, when they crushed and snorted Adderall and Ativan. In June 2012, the two crushed and snorted SrA BT's prescribed Percocet over a 10-day period.

The two began using Bron in June 2012 after seeing a commercial on the Armed Forces Network warning servicemembers that this cough medicine contains a narcotic and therefore is illegal for them to use, despite being available for purchase in Japanese stores. After doing some research about its effects and detectability through urinalysis testing, the two purchased Bron at a Japanese drugstore and used it for the first time.

Over the next six months, SrA BT saw the appellant use Bron 100 to 150 times. The two took increasing amounts of the drug over time as they developed a tolerance for its effects, and they also switched to a powdered form which had fewer adverse side effects. Eventually they were using it on a daily basis, including at work. To maintain this level of use, the two traveled to local drugstores multiple times per week and brought

the substance onto base in their vehicles. Two other Airmen, Airman First Class (A1C) SR and Airman (Amn) GB testified about their observations of the Bron use and purchases by the appellant and SrA BT. Amn GB also testified that the appellant offered him Bron, which he refused to take.

SrA BT also witnessed the appellant misusing Klonopin he had received through a prescription. Instead of swallowing the prescribed amount, the appellant would chew multiple pills so he would feel the effect faster. The appellant also gave SrA BT two of the pills. The two of the them mixed Klonopin with Bron in order to increase the sensation.

Following a litigated trial, the appellant was convicted of wrongfully using all five controlled substances, distributing clonazepam (Klonopin), introducing dihydrocodeine (Bron) onto Misawa Air Base, and soliciting an Airman to use dihydrocodeine (Bron) by offering it to him.[1] The appellant was also convicted of driving a car while impaired by dihydrocodeine (Bron) and clonazepam (Klonopin) and of violating a lawful general order by having contact with the three Airmen after being directed not to do so.

*Admissibility of Presumptive Drug Test*

At trial, SrA BT testified about one of the times he and the appellant used Bron and Klonopin in combination with the intention of getting "high." The following morning, the appellant had a seizure while at the Base Exchange and was taken to the base emergency room. While there, he was given a urine drug screening test using a device called the "Alere iCassette." This test revealed a presumptive positive result for opiates and oxycodone. Prior to trial, the appellant moved to exclude evidence of the results from this testing as too unreliable to meet the evidentiary standard required for scientific evidence to be admissible.

Recognizing the arguments of appellate counsel with regards to Mil. R. Evid. 702 and its interplay with *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993), and *United States v. Houser*, 36 M.J. 392, 397 (C.M.A. 1993), we need not resolve the admissibility of the drug test if any error in its admission was harmless.

Improper admission of expert testimony is harmless if the error did not have a substantial influence on the findings. *United States v. Flesher*, 73 M.J. 303, 318 (C.A.A.F. 2014). We determine if an error had a substantial influence by assessing four factors: "(1) the strength of the Government's case; (2) the strength of the defense's case; (3) the materiality of the evidence in question; and (4) the quality of the evidence in question." *Id.*

---

[1] The appellant was acquitted of distributing lorazepam and dextroamphetamine, obstructing justice by attempting to influence the testimony of the three Airmen, and soliciting Airman First Class SR to use dihydrocodeine.

Although argued substantively by trial counsel, the test results carried limited evidentiary value for a charged timeframe of over eight months, from May 2012 to January 2013. The test was overshadowed by the remaining testimony of multiple witnesses establishing the appellant's use of controlled substances over 100 times. The test results were material only to alleged uses of Bron and/or oxycodone in the days leading up to the seizure. The quality of the evidence was also subject to challenge. Trial defense counsel highlighted the limitations of the test through cross-examination specifically pointing out that the manufacturer of the test recommended confirmation testing with gas chromatography–mass spectrometry, which was not accomplished in this case. Based on these facts, we find that any error in admitting the test results did not have a substantial influence on the findings. Therefore, assuming error *arguendo*, based on the overwhelming evidence, we find no possibility of material prejudice to the appellant.

*Admission of Bank Statement*

As noted above, the appellant was charged with using Bron, an over-the-counter cough medicine containing dihydrocodeine, a Schedule III controlled substance. At trial, SrA BT, a friend and co-worker of the appellant, testified that he saw the appellant use this substance on 100 to 150 occasions during a six month period. The two would generally drive to an off-base store to purchase Bron three to five times a week, paying in cash most of the time.

On 4 January 2013, SrA BT self-identified as a drug user based on his daily use of Bron and was admitted to the on-base hospital while awaiting admission to an inpatient facility. He testified that the appellant visited him there several days later and announced he was making a "Bron run." SrA BT asked the appellant to bring some back for him and gave the appellant his debit card and personal identification number (PIN) so he could withdraw 5,000 yen from an automated teller machine (ATM) for the purchase. The appellant later returned and gave SrA BT a water bottle he said contained Bron.

A panel member asked SrA BT whether he had access to bank records that would show whether the appellant used the debit card during the time frame of his hospitalization. SrA BT responded that he believed his bank records were mailed to his home in Ohio and that he had never checked to see if the card had been used.

At the request of the Government, SrA BT logged into his bank account and printed out the statement for the relevant time period. Later in the trial, the Government recalled SrA BT to more fully answer the panel member's question.

The defense objected to the admission of the bank records on foundation, authentication, and hearsay grounds. SrA BT told the military judge how he had accessed his bank account and printed the relevant statement. He described many of the transactions on the statement and remembered authorizing most of them. He pointed to a

$59.52 debit withdrawal as matching the amount of money he had authorized the appellant to withdraw. SrA BT acknowledged that he had no knowledge of the bank's record keeping procedures and was not absolutely sure that the debit withdrawal was made by the appellant. The military judge admitted the bank statement into evidence, finding it was properly authenticated by SrA BT. The exhibit was then given to the panel, without testimony from SrA BT.

On appeal, we review a military judge's decision to admit evidence for an abuse of discretion. *United States v. Freeman*, 65 M.J. 451, 453 (C.A.A.F. 2008). "An abuse of discretion occurs when the trial court's findings of fact are clearly erroneous or if the court's decision is influenced by an erroneous view of the law." *Id.* This standard takes into account that the judge has a wide range of choices, and we will not reverse while the decision remains within that range. *Id.*

At trial, the proponent has the burden of establishing an adequate evidentiary foundation. *United States v. Maxwell*, 38 M.J. 148, 150 (C.M.A. 1993). This burden can be met with direct or circumstantial evidence. *Id.* at 150–51.

"The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Mil. E. Evid. 901(a). Evidence may be authenticated through the testimony of a witness with knowledge "that a matter is what it is claimed to be." Mil. R. Evid. 901(b)(1). We find the military judge did not abuse her discretion in finding this bank statement was properly authenticated by the testimony of SrA BT.

The military judge did not expressly rule on the defense's hearsay objection. The Government contends this bank statement is not hearsay because it is computer generated data created by the electronic and mechanical operations of a computer system. While SrA BT testified that he obtained the statement electronically, there was no evidence offered at trial to support the proposition that the transactions reflected in the statement were machine generated. Accordingly, we review the assertions in the statement as potential hearsay. The bank statement was offered by the Government to prove the truth of the matter asserted in it—that a withdrawal was made from the account by the appellant. "Hearsay evidence contained in a properly authenticated or self-authenticating document must qualify as an exception to the hearsay rule to be admissible." *United States v. Brindell*, 35 M.J. 369, 372 (C.M.A. 1992).

A bank statement, if otherwise admissible, must qualify as a record of a "regularly conducted activity" under Mil. R. Evid. 803(6) in order to avoid exclusion as hearsay. *Id.* The document must qualify as:

> A memorandum, report, record, or data compilation, in any
> form, of acts, events, conditions, opinions, or diagnoses,

made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness.

In this case the foundation for admitting the photocopies of bank records lacked "the testimony of the custodian or other qualified witness." *Id.* Such a witness needed to be "generally familiar" with the process of the business activity that created the document. *United States v. Harris*, 55 M.J. 433, 437 (C.A.A.F. 2001). Here, SrA BT was not familiar with how his bank gathered information and documented it on his bank statement. Under these facts, it was error for the military judge to admit the document. However, we find no material prejudice to the appellant from its admission. Although the Government argued that this document corroborated SrA BT's testimony about this particular drug transaction, the appellant's plan to bring Bron to SrA BT at the hospital was also witnessed by Amn GB. Furthermore, the evidence of the appellant's repeated use of Bron was overwhelming.

*Limitation on Cross-Examination*

Prior to pleas, trial defense counsel moved to exclude the testimony of the three Airmen (SrA BT, A1C SR, and Amn GB) on the grounds that the three witnesses had colluded in their testimony. During an Article 39(a), UCMJ, 10 U.S.C. § 839(a), session, A1C SR and Amn GB testified that they had been instructed not to discuss the case with each other and had complied with that instruction. SrA BT did not recall being instructed about this matter.

A fourth Airman, A1C JB, testified that in February 2013, he drove the three Airmen to and from work and that he heard the three Airmen talking in the car about the route that had been taken to buy Bron, where the store was, how it was mixed in a water bottle, and that the appellant had used Bron with SrA BT. A1C JB testified that the three Airmen did not specifically talk about what their testimony was going to be and never talked about coming up with a matching version of events.

The military judge denied the defense motion to exclude the testimony of the three Airmen. She noted the defense had the opportunity through cross-examination to point out inconsistent or changing statements.

During the testimony of A1C SR, trial defense counsel elicited that A1C SR understood that drug use could lead to the loss of his GI Bill and hamper his efforts to go to law school. Trial defense counsel then tried to ask the witness if he had discussed the appellant's court-martial during car rides. The military judge sustained a Government objection, finding this line of questioning did not relate to bias or Mil. R. Evid. 608(c).

She told defense counsel that he could question A1C JB about the conversations he overheard in the car.

During his testimony, A1C JB testified consistently with his testimony at the Article 39(a), UCMJ, session. He also added that SrA BT pointed out a specific route he took whenever he went to buy Bron. He also stated that one of the three Airmen said they wanted immunity.

The appellant contends the military judge erred when she refused to allow the defense to cross examine A1C SR (and the other two Airmen) about their collusion. He argues such evidence was admissible under Mil. R. Evid. 608(c). He also contends the value of A1C JB's testimony was destroyed by trial counsel's findings argument that included the following:

> Defense wants you to believe that there's this colluding going on in the car. [A1C JB] doesn't remember anything about talking about Percocet. What he does remember at least is that these witnesses are happy to get immunity because they can tell the truth about everything that happened.

We review a military judge's decision to exclude or admit evidence under Mil. R. Evid. 608 for abuse-of-discretion. *United States v. Bins*, 43 M.J. 79, 83 (C.A.A.F. 1995). Mil. R. Evid 608(c) "allows for evidence to show bias, prejudice, or any motive to misrepresent through the examination of witnesses or extrinsic evidence." *United States v. Moss*, 63 M.J. 233, 236 (C.A.A.F. 2006) (citing *United States v. Bahr*, 33 M.J. 228, 232 (C.M.A. 1991)). "The partiality of a witness . . . is always relevant as discrediting the witness and affecting the weight of his testimony." *Id.* (quoting *Davis v. Alaska*, 415 U.S. 308 (1974)) (alteration in original) (internal quotation marks omitted).

Even if the decision by the military judge to restrict the defense from cross-examining the three Airmen about their alleged collusion was an abuse of discretion, we find it did not materially prejudice the appellant. The appellant was able to elicit sufficient facts from the driver to argue that the witnesses colluded, and the likelihood of better testimony coming out on cross-examination of the Airmen themselves was quite low. Through the testimony of A1C JB, the defense elicited proof that the three witnesses were discussing facts that were relevant to the appellant's trial, and then argued to the panel that this indicated the witnesses were getting their testimony aligned with each other. The three Airmen, even testifying under immunity, were not likely to admit they had conspired to shape their testimony. The defense effectively pointed out that each of the three Airmen had something to gain by testifying on behalf of the Government and used the testimony of A1C JB to demonstrate to the panel that they had regularly discussed the events in advance of trial. Under these circumstances, we find no material prejudice to the appellant.

*Statement by the Appellant*

The appellant alleges the military judge erred in not suppressing statements the appellant made to a noncommissioned officer because he was not advised of his rights as required by Article 31, UCMJ, 10 U.S.C. § 831. "When there is a motion to suppress a statement on the ground that rights' [sic] warnings were not given, we review the military judge's findings of fact on a clearly erroneous standard and his conclusions of law de novo." *United States v. Jones*, 73 M.J. 357, 360 (C.A.A.F. 2014) (internal quotation marks omitted). When an issue presents itself as a mixed question of law and fact, we will find an abuse of discretion when the military judge's findings of fact are clearly erroneous or the conclusions of law are incorrect. *Id.*

In this case, the military judge made extensive findings of fact which are amply supported by the record, not meaningfully contested upon appeal, and which we adopt and summarize here.

Staff Sergeant (SSgt) DH was a co-worker and close friend of the appellant. He described their relationship as being like brothers. On 9 January 2013, the appellant arrived at work visibly upset. SSgt DH asked if he was okay and the appellant said he had been read his rights for using controlled substances. After SSgt DH asked if the appellant wanted to talk about it, the two went to SSgt DH's car. The appellant said he had seen another Airman's car at security forces and that this Airman had "ratted him out." Knowing of his obligation as a noncommissioned officer, SSgt DH warned the appellant not to say he had committed a crime because SSgt DH would have to report it. Believing the appellant to be innocent of the allegations, SSgt DH urged him to take a urinalysis to prove his innocence. When the appellant balked, SSgt DH became very upset with him, telling him this refusal would look suspicious. Eventually the appellant said he could not take the test because he had taken another Airman's prescription Percocet. He told SSgt DH that he would take the test several days later as the drug would be out of his system by then. The appellant also admitted to using Bron.

After thinking about the issue overnight, SSgt DH discussed the situation with his flight chief and others in his unit, without giving the appellant's name. After SSgt DH's first sergeant notified the Air Force Office of Special Investigations, SSgt DH provided a sworn statement on 11 January 2013, relaying his conversation with the appellant.

The defense moved to suppress the statements made by the appellant, arguing that they were elicited in violation of his right against self-incrimination due to the lack of rights advisement. The military judge denied that motion, applying our superior court's decision in *United States v. Duga*, 10 M.J. 206 (C.M.A. 1981), to find SSgt DH was not acting in an official capacity as the statements occurred during a conversation between friends. The appellant contends this was error.

As Article 31(b), UCMJ, is a proscription that applies to the questioner, the appropriate analysis addresses whether the facts and circumstances require the questioner to comply with it, not whether the suspect is entitled to those rights. *United States v. Gilbreath*, No. 201200427/NMCCA (C.A.A.F. 18 December 2014). In *Duga*, our superior court created a two-part test to determine when Article 31, UCMJ, warnings are required—where (1) the questioner was acting in an official capacity and (2) the person questioned perceived that the inquiry involved more than a casual conversation. 10 M.J. at 210. However, since the appellant's trial, the subjective test articulated in the second prong has been rejected. *Jones*, 73 M.J. at 362.

Under the current case law, whether SSgt DH was required to provide a rights advisement under Article 31(b), UCMJ, is evaluated by assessing all the facts and circumstances at the time of the interview to determine whether the military questioner was acting or could reasonably be considered to be acting in an official law-enforcement or disciplinary capacity. *Id.* The latter determination is evaluated by reference to "a reasonable man in the suspect's position." *Id.* (quoting *United States v. Good*, 32 M.J. 105, 108 n.2 (C.M.A. 1991)) (internal quotation marks omitted).

In her ruling, the military judge concluded that this was a "friend-to-friend conversation" and SSgt DH "should not reasonably have suspected the [appellant] of committing an offense [as f]riends normally do not jump to the conclusion that all allegations and innuendo against friends are true." She also concluded that the appellant "should have perceived SSgt [DH]'s comments at face value—that it was casual conversation and not as some form of official interrogation." Applying the *Duga* test, the military judge found the appellant's statement to SSgt DH was voluntary and admissible.

In applying the *Duga* test, the military judge concluded that SSgt DH was acting as a friend and was not acting—and could not reasonably be considered by the appellant to be acting—in an official law enforcement or disciplinary capacity. We agree with these conclusions. Like the questioner in *Jones*, SSgt DH had a personal motivation to question the appellant that was outside his role as a noncommissioned officer, and he did not possess or exercise a disciplinary role with respect to the appellant. *See Jones*, 73 M.J. at 362; *Gilbreath*, slip op. at 10. Additionally, SSgt DH did not have any law enforcement responsibilities and was not acting at the behest of law enforcement or any supervisory authorities. Although SSgt DH may have had a responsibility as a noncommissioned officer[2] to take action upon learning of the appellant's involvement with controlled substances, this does not compel a conclusion that he was acting in an official or disciplinary capacity when speaking to the appellant. Furthermore, a

---

[2] *See* Air Force Instruction 36-2618, *Enlisted Force Structure*, ¶ 4.1.4.3.1 (27 February 2009) (certified current 23 March 2012) (stating general noncommissioned officer responsibilities: "Be alert for signs of substance abuse in yourself and others. Substance abuse not only involves the use of illegal drugs, but more commonly, involves excessive or irresponsible consumption of alcohol or over-the-counter medications. All must be aware of the warning signs of substance abuse and seek the appropriate assistance through the chain of command, chaplain, or other appropriate referral.").

reasonable person in the appellant's position could not consider SSgt DH to be acting in an official law enforcement or disciplinary capacity during this conversation. In light of these facts and circumstances, the military judge did not err in concluding that SSgt DH was not acting in an official capacity when he questioned the appellant and did not abuse her discretion in admitting evidence of the appellant's statement to SSgt DH.

*Driving While Impaired*

The appellant was convicted of operating a passenger car on divers occasions between May 2012 and January 2013 while impaired by Bron (dihydrocodeine) and on one occasion in December 2012 while impaired by a combination of Bron and Klonopin (clonazepam). The appellant contends the evidence is factually and legally insufficient to sustain these convictions. The appellant argues that no witness adequately testified that his faculties were impaired while he was driving.

We review issues of factual and legal sufficiency de novo. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). "The test for legal sufficiency of the evidence is 'whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt.'" *United States v. Humpherys*, 57 M.J. 83, 94 (C.A.A.F. 2002) (quoting *United States v. Turner*, 25 M.J. 324 (C.M.A. 1987)). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the accused's guilt beyond a reasonable doubt." *Turner*, 25 M.J. at 325. In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399. Review of the evidence is limited to the record, which includes only the evidence admitted at trial and exposed to the crucible of cross-examination. Article 66(c), UCMJ; *United States v. Bethea*, 46 C.M.R. 223, 224–25 (C.M.A. 1973).

Article 111, UCMJ, 10 U.S.C. § 911, prohibits military members from operating any vehicle while impaired by a substance prohibited by Article 112a, UCMJ. The elements of this offense are that (1) the appellant operated a vehicle and (2) did so while impaired. *Manual for Courts-Martial, United States* (*MCM*), Part IV, ¶ 35.b. (2012 ed.). Impaired means "any intoxication which is sufficient to impair the rational and full exercise of the mental or physical faculties." *MCM*, Part IV, ¶ 35.c.(6).

At trial, SrA BT testified that the appellant was the driver for some of their journeys to purchase Bron. He described how the two of them would consume Bron in the parking lot of the store and then drive the 35–40 minutes back to base. Within 15 to 20 minutes of ingesting the Bron, SrA BT would feel "euphoric, relaxed" and agreed he was "impaired." The appellant told SrA BT he was feeling the same way. A1C SR and Amn GB also saw the appellant driving about 15 to 20 minutes after ingesting Bron.

The specification alleging the appellant drove a vehicle while impaired by a combination of Bron and Klonopin stemmed from an incident at the squadron holiday party in December 2012. Both SrA BT and A1C SR saw the appellant ingest the two substances in advance of the party and rode in the car while the appellant drove them to the party. Shortly after the appellant arrived, the appellant's commander observed him slurring his speech and speaking as if he had a "heavy tongue." Believing him to be impaired, the commander allowed him to remain at the party, believing it was safer for the appellant.

In addition to the testimony of these individuals who witnessed the appellant driving after ingesting Bron and/or Klonopin, the forensic toxicologist testified that, in his expert opinion, someone consuming Bron at the levels attributed to the appellant would experience psychomotor and cognitive impairment. This would include delayed response times, attention distractions, mental dullness, feelings of sedation, and/or decreased ability to process information.

Having paid particular attention to the matters raised by the appellant and making allowances for not having personally observed the witnesses, we find the evidence factually sufficient to support his convictions for operating a vehicle while impaired. We are convinced beyond a reasonable doubt that the appellant drove a vehicle while under sufficient influence from these controlled substances to impair the rational and full exercise of his mental or physical facilities. Additionally, considering the evidence in the light most favorable to the prosecution, we find that a reasonable factfinder could have found this beyond a reasonable doubt.

*Cumulative Error*

We review de novo the cumulative effect of all plain and preserved errors. *United States v. Pope*, 69 M.J. 328, 335 (C.A.A.F. 2011). "Under the cumulative-error doctrine, 'a number of errors, no one perhaps sufficient to merit reversal, in combination necessitate the disapproval of a finding.'" *Id.* (quoting *United States v. Banks*, 36 M.J. 150, 170–71 (C.M.A.1992)). We are to reverse only if we find any cumulative errors to have denied the appellant a fair trial. *Id.* Since we find no material error in this case, there is no cumulative error.

*Conclusion*

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the approved findings and sentence are

AFFIRMED.

FOR THE COURT

STEVEN LUCAS
Clerk of the Court